Allen, J.
 

 The record tends to show the following facts: The plaintiff in error was arrested for illegal possession of intoxicating liquor. Upon the trial certain officers testified that they met the plaintiff in error driving an automobile upon the public highway; that as they and the plaintiff in error approached each other the automobile of the plaintiff in error stopped, and the automobile in which the officers were riding also stopped; and that thereupon the plaintiff in error took from his pocket a bottle, and picked up a stone and broke the bottle in the presence of the officers; that the officers saw liquid on the leaves and in the broken bottle, and saved a small quantity thereof, which they testified was whisky; and that thereupon the plaintiff in error was placed under arrest and held in custody until an affidavit was filed for warrant for his arrest. The plaintiff in error claimed that he was hunting for mushrooms at the point where he was found by the officers, and that he had no
 
 *514
 
 liquor -with him whatever. He denied breaking any bottle in the presence of the officers. No other testimony was introduced on his behalf.
 

 The record also shows that previous to this indictment a search warrant had been issued by the mayor of Camden directed to Moses Dodge, marshal of the village, and that it was pursuant to this search warrant that the marshal and officers followed the plaintiff in error in his automobile upon the public highway.
 

 Plaintiff in error claims that prejudicial error existed at the trial in the following particulars: (1) The search warrant was illegal, in that it was issued without the requisite formality of a preliminary affidavit. (2) The search warrant was illegal, in that it did not describe any particular property to be searched, nor state in what county the alleged offense was supposed to be taking place. (3) The apparent bias and prejudice of the mayor, who was the trial court. (4) The failure of the trial court to permit the fair and full legal and proper cross-examination of the witnesses for the state by counsel for plaintiff in error. (5) The absolute refusal of the mayor to permit counsel for plaintiff in error to present to the court any argument in behalf of his client.
 

 After a careful consideration of the record, we are of opinion that certain of the contentions above outlined are untenable. Whether or not the search warrant was invalid because of lack of a proper preliminary affidavit, or because it did not describe the property to be searched, nor the place of search, is immaterial here, because, if the mayor believed the testimony of the officers, he was justi
 
 *515
 
 fied in finding that the officers actually saw Decker in the act of illegal possession of intoxicating liquor. Therefore no search warrant was necessary to entitle them to search the defendant and his automobile. 35 Cyc., p. 1271, note 61, and cases cited.
 

 This fact also disposes of the objection that the trial court did not permit a fair and full cross-examination of the witnesses for the state by counsel for the plaintiff in error. The record discloses that cross-examination was denied mainly upon the point of the search warrant, and, inasmuch as the search warrant was not necessary, the failure of the trial court to permit this cross-examination was not prejudicial.
 

 Coming to the substantial question in the case, we shall consider the refusal of the mayor to permit counsel for the plaintiff in error to present to the court any argument in behalf of his client. As disclosed by the record, at the conclusion of the testimony the defendant asked permission to present his case, and the mayor stated that he cared “to hear no argument whatsoever”; to which action of the mayor the defendant excepted. Did this refusal upon the part of the mayor constitute reversible error? Defendant claims that it was prejudicial error because the refusal of the mayor to hear argument disclosed an evident bias and prejudice, and because by his refusal one of the defendant’s constitutional rights, particularly as guaranteed in Article I, Section 10, of the Ohio Constitution, was violated. The article reads as follows:
 

 
 *516
 

 “
 
 Except in cases of impeachment, cases arising in the army and navy, or in the militia when in actual service in time of war or public danger, and cases involving offenses for which the penalty provided is less than imprisonment in the penitentiary, no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury. * * * In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witness face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * V’
 

 The Court of Appeals held that under the circumstances herein the failure of the mayor to allow presentation of the case was not prejudicial, because of the fact that defendant’s counsel had made various arguments at different times during the trial, and that therefore the right of defending in person and with counsel was not abridged by the mayor’s refusal to hear argument. Even if this were the case, it may be questioned whether the defendant could be deprived of his right to present his entire case at the conclusion of the testimony. Moreover, upon the point that defendant’s counsel argued the ease during the progress of the trial, we cannot agree with the Court of Appeals. The record discloses that counsel for the defendant at various points during the trial
 
 *517
 
 moved to discharge defendant upon the ground of the illegality of the search warrant, and for other reasons definitely set forth in his motion. At no point, however, was argument made by counsel for defendant upon the propositions which he was advancing. He simply stated in concise form what those propositions were, and therefore, if the refusal of the mayor to permit argument was not erroneous, it was not because of the fact that the defendant’s case was argued in the court below.
 

 The state claims, however, that the provision in Section 10, Article I, does not apply in this case.
 

 Briefly stated, the argument of the state is that as this section in its first sentence states that “no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury,” and then in the second sentence speaks of a speedy trial by an impartial jury, which provision this court has held to apply only in felony cases
 
 (Stiess
 
 v.
 
 State,
 
 103 Ohio St., 33, 132 N. E., 85), the guaranties in the entire second sentence of this article do not here apply. The instant case is a misdemeanor case, for, while a third offense under the Orabbe Act would constitute a felony (Section 6212-17, General Code), the defendant is charged only with a first offense.
 

 In this connection the state cites us to
 
 State
 
 v.
 
 Marcinski,
 
 103 Ohio St., 613, 134 N. E., 438, in which the opinion states that the guaranties in the second sentence of Article I, Section 10, have been
 
 *518
 
 held to apply only to indictments that deal with capital, or infamous offenses. This proposition, however, is not declared in the syllabus.
 

 Looking to the history of Section 10, Article I, we find that the substance of the second sentence of the section is to be found in Section 11, Article VIII, of the Constitution of 1802. This section reads as follows:
 

 “That in all criminal prosecutions the accused hath a right to be heard by himself and his counsel,' to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; to have compulsory process for obtaining witnesses in his favor; and, in prosecutions by indictment or presentment, a speedy public trial by an impartial jury of the county or district in which the offense shall have been committed, and shall not be compelled to give evidence against himself; nor shall he be twice put in jeopardy for the same offense.”
 

 It will be observed that, as originally written, this sentence, which is for the most part reproduced in the present constitutional provision, gave certain guaranties to the accused in “all criminal prosecutions,” and specified that he should have a jury trial not in all criminal prosecutions but only in prosecutions by indictment and presentment. Under this measure of the 1802 Constitution, obviously, a jury trial was not guaranteed in every kind of criminal case as was the right to appear and defend in person or by counsel.
 

 In the Constitutional Convention of 1850-1851
 
 *519
 
 the first proposition found upon this point, made by Mr. Graham, was as follows:
 

 “Resolved,
 
 that the committee on Preamble and Bill of Bights be instructed to inquire into the propriety of incorporating in the bill of rights the following sections, to wit:
 

 “In all criminal prosecutions the accused shall have a right to be heard, by himself and by counsel; to demand the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his favor; and in all prosecutions by indictment, or information, a speedy public trial by an impartial jury. He shall not be compelled to give evidence against himself, nor be deprived of life, liberty or property, without due course of law. And no person shall be holden to answer for any crime, the punishment of which may be death, or imprisonment in the penitentiary, unless on a presentment on [or] an indictment of a grand jury.” Debates Ohio Convention 1850-1851, Vol. I, p. 191.
 

 After having been referred to the committee on the Preamble and Bill of Bights, the provision as to trial by jury was eliminated, and the section was made to read as follows:
 

 “No person shall be held to answer for a capital, or otherwise infamous crime (except in cases of impeachment, and in cases arising in the army and navy or in the militia, when in actual service in time of war, or public danger, and in eases' of petit larceny, and inferior, and in public offenses) unless on presentment or indictment of a grand
 
 *520
 
 jury. And in any trial in any court whatever, the party accused shall he allowed to appear and defend in person, and with counsel, to demand the nature and cause of the accusation against him, and to have a copy thereof, to meet the witnesses face to face, and to have compulsory process to procure their attendance — nor shall any person be compelled in any criminal case, to be a witness against himself or be subject to be twice put in jeopardy for the same offense.” Debates, Ohio Convention 1850-1851, Yol. II, p. 231.
 

 In the proposal reported out from the committee on Preamble and Bill of Bights, so far from depriving defendants charged with misdemeanors of the right to defend in person and by counsel, the committee emphasized that the guaranties of the second sentence were given in every case of whatever nature, for it changed the phrase “in all criminal prosecutions” to “in any trial in any court whatever.” By process of amendment the word “whatever” was stricken out; no doubt upon the ground that it was redundant. Several minor changes were made, and the pertinent part of the section remained unchanged until shortly before adoption of the final report. Debates Ohio Convention 1850-1851, Yol. II, pp. 328, 329, 330, 806, and 826.
 

 In this form the section did not contain the provision that the accused should have a right to a speedy and impartial trial by jury in the county in which the offense was committed. This amendment was offered by Judge Banney when the report came up for final consideration. No discus
 
 *521
 
 sion was had upon the amendment, but it was inserted in the sentence beginning “In any trial, in any court,” so that to-day the provision with regard to impartial trial by jury has physical place in the provision, which gives the accused certain specific and necessary rights in the method of trial. Debates Ohio Convention 1850-1851, Yol. II, p. 476.
 

 As we understand the contention of the state, it is that because this second sentence of the section refers to jury cases the guaranty of the right to appear and defend in person, or by counsel, applies only in jury cases, and hence not in this case, it having been held in a long line of cases that the right of trial by jury does not exist in cases of misdemeanor.
 
 City of Fremont
 
 v.
 
 Keating,
 
 96 Ohio St., 468, 118 N. E., 114;
 
 Hoffrichter
 
 v.
 
 State,
 
 102 Ohio St., 65, 130 N. E., 157;
 
 Stiess
 
 v.
 
 State,
 
 103 Ohio St., 33, 132 N. E., 85,
 
 supra; Cochran
 
 v.
 
 State,
 
 105 Ohio St., 541, 138 N. E., 54. We cannot agree with this contention. As originally written in the Constitution of 1802, the section made no distinction between the various kinds of crimes. The guaranties were given in all criminal cases. As re-enacted in the Constitution of 1850-1851 (Art. I, Section 10), the provision “in all criminal cases,” so far from being limited, was made more specific, namely, “in every trial in every court.” We do not agree that the insertion of the provision as to jury trial was made with a view of limiting the preceding guaranties as to the right to appear and defend in person and with counsel, which had so definitely been attached to trials of every nature by the phrase “in every
 
 *522
 
 trial in every court.” There is nothing to indicate that intention in the debates and, in fact, the history of the article shows the contrary. The provision upon the right of jury trial, Article I, Section 5, Ohio Constitution, which was contained in the same report upon the Preamble and Bill of Rights, of which the measure under discussion was part, was somewhat general. Judge Ranney was not a member of the committee upon the Preamble and Bill of Rights, and therefore was unable to bring up the subject in committee. Evidently by his amendment Judge Ranney desired to make the right of jury trial absolutely specific, as being one of the rights of persons accused of felony. It appears, however, that he did not intend by this insertion to give the right of jury trial in cases of misdemeanor as well as of felony.
 

 This theory that Judge Ranney offered the amendment as to jury trial in Article I, Section 10, in order to make definite that particular guaranty, rather than in order to limit and change the guaranties already extended to the accused in all criminal cases, is strengthened by the fact that in one of the discussions of the report upon the Preamble and Bill of Rights, previous to offering his amendment as to jury trials, Judge Ranney said that:
 

 “He perceived that the committee had left out of this report a number of articles in the old Bill of Rights. He had copied one of them, and would move its adoption as an additional section, as follows: ‘Section —. That all courts shall be open, and every person, for any injury done him, in his lands, goods, person, or reputation, shall
 
 *523
 
 have remedy by the due course of law, and right and justice administered without denial or delay.’ ” Debates Ohio Convention 1850-1851, Yol. II, p. 337.
 

 This amendment was adopted without discussion. It is thus apparent that Judge Ranney had it upon his mind to include in the Constitution of 1850-1851 provisions of the old Constitution of 1802 that had been omitted in the Bill of Rights. It was therefore only with the purpose of adding a specification as to the right of jury trial, such as had been obtained in the original constitution, and not with any idea of limiting the other guaranties of Article I, Section 10, to jury cases, that Judge Ranney offered the amendment.
 

 Under constitutional provisions in other states similar to Article I, Section 10, of the Ohio Constitution, there are numerous authorities in support of the proposition that even limiting the right of counsel to argue a case deprives the defendant of his constitutional right to appear and defend in person or by counsel. Exhaustive notes upon the subject are to be found in 2 Ann. Cas., p. 435; 25 L. R. A., (N. S.), 1027; 42 L. R. A., (N. S.), p. 209. These authorities lay down the rule that in the absence of statute the trial court in its sound discretion may properly limit the time consumed by counsel in argument, and that this discretion will not be interfered with by the appellate court, unless the time of argument in trial was made so short as manifestly to deprive counsel from presenting the case fully and fairly. An Ohio case to the same effect is
 
 Dille
 
 v.
 
 State,
 
 34 Ohio St., 617, 32 Am. Rep., 395. With this proposi
 
 *524
 
 tiou we are in accord. However, in this case we have an instance not of limiting the argument, but of absolutely prohibiting the argument. We have been cited to no cases in this state and only to one in the United States where this state of facts exists. In that case,
 
 People
 
 v.
 
 Berger,
 
 (284 Ill., 47), 119 N. E., 975, it was held:
 

 “In a prosecution for keeping a house of ill fame, trial being to the court, where the evidence was subject to but one interpretation, adverse to defendant, and defendant’s counsel did not ask permission to argue the case until the trial judge had stated what his conclusions were to be, the court’s refusal to permit the argument was not reversible error.”
 

 It is evident that the ruling of the court in the above case was based primarily upon the fact that counsel did not ask to present his views at the proper time. Even under such circumstances, however, the decision seems to us unsound.
 

 The cases listed in the notes cited above hold that even a limitation upon the time extended to argue the case must not be such as to deprive the accused of his legal right to make his defense and to be heard on his whole case. Thus
 
 Peagler
 
 v.
 
 State,
 
 110 Ala., 11, 20 So., 363, holds that the constitutional provision that accused has a right to be heard by himself and counsel guarantees to him the right to be heard on any question of law and fact which may arise at any time during the prosecution. In
 
 White
 
 v.
 
 People,
 
 90 Ill., 117, 32 Am. Rep., 12, the Supreme Court of Illinois decided that upon the trial of an.indictment the defendant has a constitutional right to ample time in the
 
 *525
 
 argument of his case to discuss both the facts and the law of the case, of which right the court could not properly deprive him. Both of the above cases were jury cases, but we see no distinction between a jury case and a non-jury case upon this point. The right to present a defense is basic in every lawsuit of every kind whatever.
 

 In
 
 Dille
 
 v.
 
 State,
 
 34 Ohio St., 617, 32 Am. Rep., 395,
 
 supra,
 
 the court stated:
 

 “The court has no discretionary power over the
 
 right
 
 itself [the right to appear and defend in person and with counsel] for it cannot be denied. And hence it has no right to prevent the accused from being heard by counsel, even if the evidence against him be clear, unimpeached, and conclusive in the opinion of the court.”
 

 The first paragraph of the syllabus holds:
 

 “The constitutional right of a person accused of felony ‘to appear and defend in person and with counsel,’ cannot be denied, or its exercise unreasonably abridged; but the court may limit the argument of the accused or his counsel, provided that the accused is not thereby deprived of a fair trial.”
 

 The case against the defendant in the instant prosecution is strong, and a reviewing court would -not be justified in reversing it upon the weight of the evidence. However, the refusal of the mayor to hear argument indicated bias and prejudice, and deprived the defendant of his right to be defended by counsel. He was entitled to state his case fully and fairly, both upon the legal propositions and upon the evidence presented. This right he was
 
 *526
 
 not given. It is a fundamental right, one going to the very essence of the fairness of court hearings, and its deprivation under our constitutional provision constitutes reversible error. Judgments of the Court of Appeals and the court of common pleas reversed.
 

 Judgments reversed.
 

 Marshall, C. J., Jones, Matthias, Day, Kinkade and Robinson, JJ., concur.