**UNITED STATES of America ex rel. Sp 4/C Norman WILCOX, U.S.A., Petitioner,**

v.

**COMMONWEALTH OF PENNSYL-VANIA, Respondent.**

Misc. No. 3619.

United States District Court E. D. Pennsylvania.

Sept. 26, 1967.

Norman Wilcox, pro se.

Alfred T. Rundle, Superintendent, Graterford, Pa., Arlen Specter, Dist. Atty. of Philadelphia County, Philadelphia, Pa., for respondent.

## OPINION

FULLAM, District Judge.

On March 29, 1966, the petitioner, Norman Wilcox, was sentenced to a term of not less than five years nor more than ten years in the penitentiary, upon being convicted of rape, after a trial without a jury in Philadelphia County. Subsequently, at argument of his post-trial motions, his minimum sentence was reduced to four years, but the motions were denied in all other respects. The conviction was upheld on direct appeal. Commonwealth v. Wilcox, 208 Pa.Super. 518, 223 A.2d 914 (1966). Relator has twice been denied relief under the Post-Conviction Hearing Act (19 P.S. § 1180–1 et seq.); his first petition was dismissed without a hearing, as "frivolous", and a later petition was also denied without a hearing, on the ground that all of his claims had been previously litigated.

The record of his criminal trial discloses at least one constitutional deprivation which clearly requires the issuance of the writ here sought. It appears that, as the petitioner's counsel was attempting to commence his closing argument after the evidence was presented, the trial judge interrupted him to announce the verdict of guilty. Compare Commonwealth v. Richman, 132 Pa.Super. 529, 1 A.2d 578 (1938).

It can hardly be doubted that the absolute right of counsel proclaimed in Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) includes the right to have counsel be heard in summation before verdict. "Arguments of counsel are an integral part of a jury trial. They are not mere trial trappings which a judge is at liberty to dispense with * * *." Commonwealth v. Brown, 309 Pa. 515, 521, 164 A. 726, 728, 86 A.L.R. 892 (1933). The right to have counsel present legitimate argument to the fact finder is recognized as an essential ingredient of due process even in civil cases. Nestor v. George, 354 Pa. 19, 25, 46 A.2d 469 (1946); Martin v. Philadelphia Gardens, Inc., 348 Pa. 232, 35 A.2d 317 (1944).

I am unable to perceive any meaningful difference between what occurred in this case and an outright refusal to permit counsel to make any closing argument. The very opening sentence of counsel's argument[1] was cut off by the announcement of the verdict. The few spluttering comments which counsel was able to make thereafter could scarcely be expected to have any effect on the outcome, even if it be assumed that the verdict had not yet been recorded and perhaps could have been modified.

While I am satisfied that due process of law includes the right to have counsel argue even the most hopeless case to the fact finder before verdict, it is unnecessary to extend the doctrine to such limits in the present case, where the evidence for conviction was, to say the least, far from overwhelming. The victim was a 38-year-old woman who had had a quarrel with the "boy friend" with whom she was living and who was staying temporarily with an older female acquaintance in a house which had previously attracted police attention because of noisy parties. On the evening in

---

1. "MR. BERKOWITZ: [defendant's attorney] * * * You have some terribly vital contradictions.
 "THE COURT: Such as what?
 "MR. BERKOWITZ: You have Miss Swinndel.

"THE COURT: Yes, go ahead. The verdict is guilty of rape." (N.T. Page 89).

question, the two women had gone to a nearby taproom, where the relator and his friends also were present (whether in the same social group with the victim is disputed). The victim complained of feeling ill and the two ladies returned to the house, where the victim stretched out on the sofa in the front room and fell asleep. Thereafter, she was awakened by the noise of someone pounding on the front door seeking admittance. When this was refused, three men came in through the front window. One of the men (not this relator) asked her to have sexual relations with him, and proceeded to extinguish all the lights (apparently, by disconnecting the light cords from the sockets). The record is extremely vague as to further details, but it appears that at least one of the men remained in the adjoining dining room with the older woman, restraining her from interfering; and that various of the men had sexual relations with the victim, in succession. It would be a proper inference that all three of the men participated, but a different inference would be equally valid. There was evidence that the relator was one of the men present, but both ladies were unable to state the degree of his participation, if any.

While these events were occurring, a male acquaintance of the older woman attempted to gain admittance to the house, but the door was barricaded by a chair and he was unable to enter. He thereupon summoned the police. According to the victim, the police arrived while the rape was in progress, and the three men ran out the door as the police arrived.

The record reveals some rather surprising omissions. For example, at no point did the victim testify that she had not consented to sexual relations. (While lack of consent might well be inferred from the surrounding circumstances, such an inference is far from inevitable. The evidence of actual force was extremely sketchy, and might support a finding merely of rough and primitive cajolery. The victim's dubious morals and casual living habits, including at least one subsequent arrest, must also be considered). By way of further example, the only police testimony at trial consisted of reading into the record a stereotyped summary of a complaint report; no eyewitness police testimony was presented.

It seems reasonably clear from the testimony at the trial that the house had been raided by the police a few days previously (perhaps the preceding night) and that both the victim and the relator were present on that occasion. There were some glaring contradictions and inconsistencies in the victim's testimony, both when compared with her testimony at the preliminary hearing, and when compared with the testimony of other prosecution witnesses. For instance, her emphatic and repeated testimony at trial that she had been staying at the house only a couple of days is flatly contrary to her own pretrial testimony and other prosecution evidence.

The police report shows that the rape was reported at 3:45 a. m. on December 27, 1964. This time is very difficult to reconcile with the testimony of the two women as to the time they returned from the taproom and their relative state of wakefulness. More important, the Commonwealth's evidence does not otherwise establish any date at all. The defendant and his wife testified to having been at a party at that house "the night before" when it was raided by the police. It is even arguable that this "raid" relates to the same occasion that the victim was testifying about. Under any view of the evidence, it seems strange that neither the records of the police department nor the testimony of police officers was presented, pertaining to the actual raid, either to corroborate the victim on a vital point, or to exonerate the defendant.

It is obviously not the function of a Federal District Court in a habeas corpus case to second-guess factual determinations by the state trial court. The foregoing review of the trial record is set forth here, not for the

purpose of indicating a different view as to guilt or innocence, but simply to emphasize that there were a number of strong arguments for counsel to make at the trial, which might very well have altered the result had they been permitted in advance of the verdict. Applying the standards mandated by Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) the constitutional violation here involved cannot be regarded as harmless. On the contrary, the prejudice to the petitioner is manifest.

█ The record also discloses that the distinctions between a trial and a plea of guilty seem occasionally to have been overlooked, in such matters as the use of relator's criminal record, (which, while showing several arrests, showed no convictions of any serious offenses) ;[2] in the general acceptance of hearsay evidence and other inadmissible evidence; and in the trial judge's statement before imposing sentence, "You have to give him some allowance for waiving a jury trial." The presumption of innocence, which is also an essential ingredient of due process of law, was not afforded this defendant at this trial.

It is not clear that the foregoing issues were raised on direct appeal. All were raised, in effect, in the two post-conviction proceedings. No contention is here made that there remain any meaningful state remedies available to the petitioner. Although the petitioner failed to appeal in the post-conviction proceedings, the record negatives any conscious bypassing of state remedies. In view of the failure to raise any exhaustion argument, the obvious necessity for ultimate relief, and the length of time the petitioner has already spent in custody pursuant to an invalid conviction, I am satisfied that no useful purpose would be served in withholding relief in this Court pending further state court proceedings.

For the foregoing reasons, an order will be entered granting the writ, and directing that the relator be discharged from custody unless, within 30 days, the Commonwealth vacates the judgment of conviction and schedules a prompt retrial. This order will be stayed temporarily, in order to permit an appeal if desired.

To avoid possible future difficulties in the event of retrial, it is suggested that the record should make clear whether or not there has been a valid waiver of trial by jury, in compliance with statutory and constitutional requirements.

---

**2.** The trial judge commented: "You see, this man knows how to put up some pretty good stories."