Possession of marijuana for personal use; sentence: one year imprisonment in the county jail. The appellant waived trial by jury, and the case was tried solely before the circuit judge.
Joe Marsh, the State's first witness testified that he was a reserve deputy of the Blount County Sheriff's Department. On the night of July 21, 1974, he was on duty and patrolling with a regular deputy sheriff, Larry Staten. They drove by a chert pit near the Lebanon Church in Blount County where several cars were parked and a group of young people were gathered. He stated that they stopped and started talking to some of the gathering to determine what was happening. Marsh said that he saw the appellant coming from the direction of a small yellow convertible. The appellant was having difficulty walking and appeared to be drunk. The top of the convertible was open, and Marsh looked inside. He saw a brown grocery bag containing four or five plastic bags with a green substance in them. He lifted the bag out of the car, and Deputy Staten then asked, "Who does this belong to?" Marsh said that the appellant answered, "It's mine." Marsh stated that another person present, Coleman Elrod, claimed the material and both were arrested and charged with possession of marijuana.
Deputy Staten testified that he and Marsh stopped at the chert pit and got out of the patrol car to determine what was happening. They talked to some of the people there and then started looking through the windows of the cars parked there. He stated that he was merely looking through the windows, but Deputy Marsh was, "giving the cars a pretty thorough search." *Page 892 
Staten said he observed the appellant when they arrived and that he was staggering and appeared to be intoxicated. He testified that Marsh picked up a bag of marijuana from the yellow sports convertible.
Staten testified that he was trained in identification of controlled substances and marijuana, that he had experience as an officer with marijuana, and that based upon his training, experience and knowledge in recognizing controlled substances and drugs, that in his opinion, the bag contained marijuana. He testified that he asked who the marijuana belonged to and that the appellant said, "It's my marijuana." Staten said Coleman Elrod then spoke up saying, "That marijuana doesn't belong to Vernon. I bought it from him." Elrod was then arrested also. A report from the State Toxicologist, stating that the substance was found to be marijuana was introduced during Deputy Staten's testimony. On cross-examination, Staten testified that he had not seen the appellant in the convertible and had not seen him in possession of the marijuana. The State rested its case. There was no motion to exclude the State's evidence at that point.
The defense called Coleman Elrod who testified that he was present on the night in question and that he had borrowed the appellant's car. He stated that he went and picked up the sack of marijuana. He then returned to the chert pit, and that the appellant had not been in the car from the time he drove it until the marijuana was found by the deputy. The witness further stated that the appellant had no knowledge of the marijuana, did not own it, sell it to him, or otherwise have anything to do with the marijuana. Elrod testified:
 "They got out and first started searching cars and asking us what we were doing there. And we said we were just up there sitting. And they found marijuana in Vernon's car. And they asked whose car it was. And Vernon stood up and said, `It is my car.'
 "And then the officer said, `You are under arrest for possession of marijuana.' And I said it was my marijuana. And I tried to explain to him that I had just driven the car. And they said, `Well, you are under arrest for possession of marijuana. And Mr. Grigsby, you are under arrest for public drunkenness."
Elrod further testified that he had plead guilty to possession of the same marijuana and that he was presently under sentence.
Ralphine Hayes, Debbie Belou, Donald Nichols and Larry Edwards Cornelius each testified for the defense in substance as follows: that they were present at the chert pit on the night in question together with the appellant and were merely visiting and talking; that no one was smoking marijuana or in possession; that they did not see the appellant in possession of marijuana or hear him having conversation about it until the police arrived; that Coleman Elrod borrowed the appellant's car and was absent for a time and then returned; that the appellant did not go back to his car or near it from the time Coleman Elrod returned; that the appellant did not state to the deputies that the marijuana found in his car gelonged to him, and; that the deputies told the appellant they were placing him under arrest for public drunkenness.
The appellant, Vernon Grigsby, testified that he was placed under arrest for possession of marijuana on the night of July 21, 1974, when a sack of marijuana was found in his car. He stated that Coleman Elrod was placed under arrest for possession of the marijuana when he came up and told officers that it belonged to him, and at that point, the appellant was placed under arrest for public drunkenness. He said that he at no time told the officers that the marijuana belonged to him, but he had told them his name and that the car belonged to him. He stated that the marijuana did not belong to him and that he had no knowledge of it until the deputies found it. He did not know that Coleman Elrod was going to get the marijuana and *Page 893 
said that he had not been in his car or close to it since Elrod returned with it. He stated that he had not been smoking marijuana or drinking, but that he was tired and had been up all weekend because of some medicine he was taking.
At the end of the appellant's testimony, the defense announced: "That is our defense, if it please the Court. That is all that we have." The following then immediately occurred:
 "THE COURT: Well, I am convinced beyond a reasonable doubt that the Defendant had marijuana in his possession. And we agreed that it would be tried as a misdemeanor. And it would be the finding that he had it for his own personal use. And of course, I think the evidence might have shown that he —
 "MR. CATO: Would Your Honor care to hear from me on this case, or have you made up your mind?
 "THE COURT: I have heard the evidence. And I am satisfied that he was in possession of marijuana and that he was having it for his own use of some kind. I am finding the Defendant guilty of possession of marijuana for his own personal use. . . ."
The court promptly judged the defendant guilty and asked the appellant and his counsel if they had anything to say before sentence was pronounced. Defense counsel stated: "Your Honor, we take exception to the Court's ruling." The court asked if he had anything further to say, to which the defense counsel replied that the evidence was insufficient to sustain the finding of guilt.
The appellant contends that the trial court erred in refusing him the right to be heard in closing argument, through his counsel. The State, in its brief, contends that there are no cases holding that a judge in a nonjury trial must hear closing arguments. The State contends that the only right to argument is limited to jury trials, pointing out that each case cited in appellant's brief on this point refers only to jury trials.
This issue was conclusively decided by the United States Supreme Court on June 30, 1975, in the case of Herring v. NewYork, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593. There, at the conclusion of the case for the defense, Herring's attorney requested to "be heard somewhat on the facts." The trial judge responded: "Under the new statute, summation is discretionary, and I choose not to hear summations." The trial judge immediately adjudged Herring guilty and subsequently imposed sentence.
The Supreme Court held that the New York statute, granting power to judges in non-jury criminal trials to deny the right of summation by counsel, was an unconstitutional violation of the Sixth Amendment right to assistance of counsel.
Quoting from Herring, we find:
 "There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge. The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense." (Footnotes omitted.)
The decision in Herring, is binding upon this Court. The trial court's refusal to allow closing argument by appellant's counsel in the instant case is, therefore, a denial of assistance of counsel in contravention of the Sixth Amendment to the United States Constitution.
REVERSED AND REMANDED.
All the Judges concur. *Page 894