# WILLIAM SPENCE v. STATE OF MARYLAND

[No. 52, September Term, 1982.]

*Decided August 10, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Louis P. Willemin, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Maureen O'Ferrall Gardner, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH and RODOWSKY, JJ., dissent. MURPHY, C. J., filed a dissenting opinion at page 426 *infra,* in which SMITH and RODOWSKY, JJ., join.

The question we shall decide is whether the opportunity to argue the merits of a criminal case after a verdict rendered prior to argument and later stricken satisfies the defendant's constitutional right to the assistance of counsel throughout the proceedings.

The following pertinent facts were presented to the Criminal Court of Baltimore (now Circuit Court for Baltimore City) in the non-jury trial of William Spence. On the evening of June 14, 1980, Dennis McCausland was at home in his apartment when his son responded to a knock on the door. The son, apparently unable to understand the response to his question as to who was there, opened the door. Two strange men stepped into the apartment. One remained by the door, while the other, William Spence, came further into the living room, stating that he was looking for someone on the third floor. According to McCausland, a man named Edwards, the only person who lived on the third floor, was at the time in McCausland's apartment. Spence, who was carrying a bag and appeared to have been drinking, com-

menced walking around the apartment, picking up items. McCausland did not follow Spence because he did not know what was in the bag. The man by the door urged Spence to leave, but Spence ignored him.

When Spence returned to the living room McCausland was sitting in a chair next to a stand with a gun on it. McCausland grabbed the gun and Spence jumped on top of him, wrestling for the gun. Everyone else fled the apartment. Several minutes later when a noise was heard from outside, McCausland let go of the gun and Spence ran from the apartment with it. He left the bag and other items in the apartment and the gun was never recovered.

The police officer who responded to the incident recovered the bag which Spence had left. The bag contained a pair of ladies' shoes and stockings, a prescription vial with the name "C. Spence," and some bills listed to an address in Baltimore which was the home of Spence's mother. After the officer left McCausland's apartment, he received a call reporting a suspicious person knocking on doors in the same apartment complex. The officer responded to the call, observed Spence in the area and arrested him.

Spence testified at trial that he was drunk on the evening in question, that he had given $80.00 to a girl to buy drugs, and that he and the other man were looking for this girl when he went to McCausland's apartment. He had not been told not to enter the apartment. He was carrying the bag, which belonged to his mother, because he did not want to leave it in the car. He was discussing his problem with the occupants of the apartment when McCausland grabbed the gun and a struggle ensued. Spence denied picking up anything in the apartment and says he grabbed McCausland to avoid being shot. When he fled the apartment, he threw the gun down the sewer and continued to knock on doors looking for the girl with his money.

At the conclusion of the State's case Spence moved for a judgment of acquittal and argued the motion. At the conclusion of all the evidence he renewed his motion and submitted without further argument. The court recessed for the day

prior to ruling on the motion and the next day denied the motion in an oral opinion. After denying the motion, the court continued without pause in announcing the verdicts convicting Spence of robbery, burglary, assault and theft. When Spence's counsel objected to his lack of opportunity for summation prior to the verdicts, the court struck the verdicts and directed counsel to argue the case if he desired. Counsel moved for a mistrial asserting that argument would be a waste of time. The court denied the motion for a mistrial whereupon counsel presented his closing argument. At the close of argument the court stated that it had considered counsel's arguments but would adopt by reference all of its previous comments and findings. Spence was sentenced to 15 years for burglary, 10 years for robbery, 10 years for assault, and eighteen months for theft. On appeal the Court of Special Appeals affirmed, *Spence v. State,* 51 Md. App. 359, 443 A.2d 648 (1982). We now reverse that judgment.

It is well-settled in this State that the opportunity for summation by defense counsel prior to verdict in a non-jury trial as well as in a jury trial is a basic constitutional right guaranteed by Article 21 of the Maryland Declaration of Rights and the Sixth Amendment to the United States Constitution as applied to the States by the Fourteenth Amendment. We recognized the right in *Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962). In that case the trial judge had entered the verdict at the close of the defendant's case. Defense counsel brought to the court's attention that argument had not been permitted. The trial judge indicated that argument would not change his mind. This Court in reversing the conviction noted that "the same constitutional guaranty applicable to a trial by jury [right of a defendant to have counsel make a proper argument] applies with equal force to a trial before a judge sitting without a jury." *Id.* at 208. The Court also stated that

> the Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, how-

ever simple, clear, unimpeached, and conclusive the evidence may seem, unless he has waived his right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny accused such right. [*Id.* at 207 (citations omitted).]

The United States Supreme Court followed our lead in 1975. In *Herring v. New York,* 422 U. S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the Court struck down a New York statute which provided that every judge in a non-jury criminal trial had the authority to deny final summation before rendition of judgment. The Court held that the statute denied the accused the assistance of counsel guaranteed by the Sixth Amendment of the Constitution and stressed the importance of closing argument in a criminal proceeding.

There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge. . . . [C]losing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective version of the case as a whole. Only then can they argue the inference to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. [*Id.* at 858-62.]

The Court, citing *Yopps,* pointed out that the weight of authority is clear that a denial of summation before verdict is a denial of a basic right of the accused to present his defense.

We note, however, that both *Yopps* and *Herring* are factually different from the case *sub judice;* here defense counsel was given an opportunity to make closing argument though after the verdicts were stricken. The issue thus becomes whether a closing argument after a judge has pronounced the verdict and stricken same is sufficient to comply with a defendant's right to have his counsel make a closing argument before verdict. We hold that it is not.

This precise issue has not arisen frequently. Generally, the cases involve circumstances where the trial court totally denied defense counsel the opportunity for summation and did not strike the verdicts. However, in several instances trial courts have been reversed where they reopened the case for argument but candidly admitted that counsel's argument at that point would serve no purpose.

*United States v. King,* 650 F.2d 534 (4th Cir. 1981), is illustrative. There a U.S. magistrate presiding over an obstruction of federal property case found the defendant guilty immediately after the parties had rested without giving defense counsel an opportunity to present closing argument. In response to counsel's objection the judge stated, "go ahead if you want to argue it. I have already made my finding. It's not going to change anything. . . . If you want to argue the case for the record, for the appeals, that's fine as far as I'm concerned." *Id.* at 536. The final disposition was a fine of $25.00. The Court of Appeals for the Fourth Circuit reversed the District Court, stating:

> When we are dealing with defendants who face fines and imprisonment, we cannot permit this type of restriction on the presentation of the defendant's case. Of course, the trial court retains the broad discretion to limit the scope and duration of all phases of a trial, including closing argument; however, this discretion must be exercised with proper regard for the defendant's constitutional rights. [*Id.* at 537.]

In *People v. Dougherty,* 102 Cal. App. 3d 270, 162 Cal. Rptr. 277 (1980), the California appellate court addressed the precise issue before us.[1] It said, in part:

> The record in this case clearly shows that there was a denial of Dougherty's right to have a closing argument *before* the judge made a determination of guilt or innocence. . . .
>
> Insofar as the record shows, constitutional error took place in this case. Such an error cannot be cured by the judge withdrawing the finding of guilty and reopening it for the purpose of hearing argument after the decision . . . . Hearing the matter *after* a decision by the judge is totally unrealistic. Short of the actual granting of a new trial the error remains. The bell having rung cannot be unrung (see the Rubaiyat of Omar Khayyam, stanza 72). [*Id.* at 280 (emphasis in original) (citations omitted).]

*Commonwealth v. McNair,* 208 Pa. Super 369, 222 A.2d 599 (1966), also addressed the issue of argument after verdict. In *McNair* defense counsel requested and was refused the right of summation. In reversing the trial court, the court stated:

> We cannot accept the district attorney's argument that this denial of the right of summation was not prejudicial because of the subsequent opportunity defendant's counsel had to review the evidence under the Act of June 15, 1951, P.L. 585, § 1, 19 P.S. § 871, in arguing the post-trial motions. We cannot reasonably conclude that an argument made after a decision has been made is always as effective

---

1. The State correctly points out that the decision in Dougherty has been modified by In re Michael W., 122 Cal. App. 3d 349, 175 Cal. Rptr. 886 (1981); and People v. Manning, 120 Cal. App. 3d 421, 174 Cal. Rptr. 625 (1981). However, these cases only hold that the right to summation cannot be raised for the first time on appeal as was allowed in Dougherty. Thus, the arguments advanced in Dougherty are still supported by case law and are persuasive.

as it might have been if made before such time. [*Id.* at 600.]

In *People v. Diaz,* 1 Ill. App. 3d 988, 275 N.E.2d 210 (1971), a pre-*Herring* case, the Appellate Court of Illinois, insightfully recognized the importance of summation prior to rendering a verdict.

> A fair and impartial trial is a judicial process by which a court hears before it decides; by which it conducts a dispassionate inquiry and renders judgment only after receiving evidence. Pre-judgment is the antithesis of a fair trial. In a criminal case, our statutes and constitution contemplate that the trial include an opportunity for the defendant to argue his cause by counsel. Therefore, where a defendant is found guilty before he rests his case, without an opportunity given him or his counsel to argue his cause, and without waiver of the right to argue, he is denied a fair trial and deprived of due process guaranteed by our state and federal constitutions. [*Id.* at 212-13.]

*United States v. Walls,* 443 F.2d 1220 (6th Cir. 1971); *United States v. Commonwealth of Pennsylvania,* 273 F. Supp. 923 (E.D. Penn. 1967); *Grigsby v. State,* 333 So.2d 891 (Ala. Cr. App. 1976); *Floyd v. State,* 90 So.2d 105 (Fla. 1956); *People v. Thomas,* 390 Mich. 93, 210 N.W.2d 776 (1973); *Walker v. State,* 110 S.W.2d 578 (Tex. Cr. App. 1937).

We conclude, therefore, that here the trial court violated the defendant's constitutional right to the assistance of counsel when it rendered its verdict before counsel had presented closing argument and that striking the verdict and permitting argument thereafter did not cure the defect. Counsel was effectively foreclosed from arguing to the factfinder whether the defendant entered the apartment with the intent to burgle, to rob or to steal prior to the judge announcing his decision.

In our view, at a bench trial, the presiding judge is obliged to display every indicia of having an open mind, subject to

being persuaded by a logical and convincing argument, prior to announcing the verdict. Furthermore, the verdict is the moment which signals the defendant's fate. He is constitutionally entitled to an opportunity before that moment to attempt to convince the trier of fact that he is innocent or that he is not guilty beyond a reasonable doubt. Depriving him of this opportunity is tantamount to shortening his day in court and denies him a fair trial. In our judgment, the striking of the verdict cannot restore the same stage, nor create the same atmosphere of fairness.

Moreover, due process includes the right to have counsel argue the most hopeless case to the factfinder before verdict. It is clear if counsel must argue such a case after the verdict is announced, counsel will truly be "whistling in the wind." As the Court said in *Herring, supra:*

> Some cases may appear to the trial judge to be sim-
> ple — open and shut — at the close of the evidence.
> And surely in many such cases a closing argument
> will, in the words of Mr. Justice Jackson, be "likely
> to leave [a] judge just where it found him." But just
> as surely, there will be cases where closing argu-
> ment may correct a premature misjudgment and
> avoid an otherwise erroneous verdict. And there is
> no certain way for a trial judge to identify accu-
> rately which cases these will be, until the judge has
> heard the closing summation of counsel. [*Id.* at
> 863.]

Here the error was clear and the prejudice was manifest.

The State finally argues that defense counsel's concession in his argument that the assault was a "closed question" constitutes harmless error as to the assault charge since it was probably the same argument counsel would have made before the verdicts.

At the time defense counsel's remarks were made, the trial judge had already found the defendant guilty of burglary, robbery, theft and assault, stricken these verdicts, and instructed counsel to argue. What counsel actually said was:

> As far as the assault, that's a closed question. I don't think he intended to assault him but if he did put him in fear by entering his house when he shouldn't have, then it would be an assault, whether he intended it or not, because intoxication, it's not a defense to an assault.

Whether counsel would have made these remarks if argument had been made prior to verdict we do not know. However, as we see it now, such concession by defense counsel at this stage of the proceeding may well have been his "last ditch stand" to salvage some justice from an exercise that he had already indicated to be "a waste of time." Counsel obviously felt constrained to make some effort to change the judge's mind and the trial judge's closing remarks give some credence to the idea that counsel had a burden of dissuasion. The judge said:

> Let me say, [counsel], I've listened to your argument and I don't think there is any element of the offense or aspect of the testimony that I did not consider when I made my earlier comments.
>
> * * *
>
> So, having considered your arguments, [counsel] I adopt by reference all of my previous comments and findings and now make a finding beyond a reasonable doubt that all of the essential elements have been proved and the Defendant is therefore guilty. . . .

Under these circumstances, we cannot say beyond a reasonable doubt that the error committed by the trial court in rendering the guilty verdicts prior to defense counsel's closing argument did not contribute to defendant's assault conviction.[2]

---

**2.** *See* Dorsey v. State, 276 Md. 638, 659, 350 A.2d 665 (1976), where this Court held:

> when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is

426

Accordingly, the judgment of the Court of Special Appeals is reversed.

*Judgment of Court of Special Appeals reversed.*

*Case remanded to that Court to reverse the judgment of the Circuit Court for Baltimore City and remand for a new trial.*

*Mayor and City Council of Baltimore to pay the costs.*

*Murphy, C. J., dissenting:*

The Court today fashions a *per se* rule which requires a new trial whenever the trial judge announces a verdict before the defendant has either made or waived closing argument. In so doing, the majority creates a flat and absolute rule of constitutional dimension which is not recognized in any other jurisdiction. I, therefore, respectfully dissent.

The trial in this case was before the court, sitting without a jury. At the conclusion of the State's case, Spence moved for a judgment of acquittal and argued in favor of the motion at some length. After the motion was denied, the defense presented its case. At the conclusion of all the evidence, the following colloquy ensued:

"MR. FRIEDMAN [defense counsel]: I will renew our motion for judgment of acquittal, Your Honor, as to both informations and all counts.

THE COURT: Do you want to be heard, Mr. Friedman?

MR. FRIEDMAN: Well, Your Honor, I'd submit the same argument as to the motion that I gave before.

---

able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated.

THE COURT: Mr. Crowe, do you want to be heard?

MR. CROWE: The State will submit, Your Honor.

THE COURT: All right, gentlemen, I need some time to consider this matter, frankly. . . .

. . . .

THE COURT: I've got to recess at this point. I've got to get to Annapolis and I want to take — I want to review my notes and consider some of the legal questions raised by Mr. Friedman, in any event. So we'll continue this until tomorrow morning."

The next morning, the trial judge continued the proceedings. He stated:

". . . the posture of the case is that testimony was finished and that motions for judgment of acquittal were renewed. I've had the opportunity to review my notes again and to look at some law over night. First of all let me say what I propose to do and then I'll explain why.

With respect to 0501, the robbery indictment, . . . I do deny the motion for judgment of acquittal as to counts one and three, one being the robbery count, three being the simple assault, common law assault count, and I grant the motions for judgment of acquittal as to counts two, four and five. With respect to 0502, the burglary, etc., indictment, I deny the motion for judgment of acquittal as to count one and count four and grant the motion for judgment of acquittal as to counts two and three.

Now, let me go back to 0501, the first count, the robbery count, it is charged that the Defendant on June 14, 1980, in Baltimore City at 5422 Relcrest Road did rob the complainant, Dennis McCausland, and violently did steal from him certain property which is described in the exhibit attached to the

indictment, one .38-caliber Smith and Wesson blue revolver, the value of less than three hundred dollars ($300) current money. I don't recall what value Mr. McCausland testified to but the value was not a matter of consequence, in any event, in the robbery. But, of course, the robbery is the unlawful taking and carrying away of the goods, property or money of another from the victim's person or immediate presence by force or putting in fear. I find beyond a reasonable doubt that all of the essential elements of robbery have been proved in this case, that is, that there was a taking and carrying away of the personal property of another. First of all, the hair dryer and the electric razor and also the gun and I find the complaining witnesses' testimony to be credible in that respect. I do believe that the Defendant did pick up certain items in the premises, place them in this bag that he had with him and did take the gun belonging to Mr. McCausland, that he did not get the hair dryer and the electric razor off the premises, not by any design but because he was thwarted in his efforts by the victim, Mr. McCausland, who reached for the gun and tried to stop him."

The trial judge thereafter rendered verdicts on all remaining counts, a process which occupies over six double-spaced pages in the transcript. Another two pages record a discussion about a pre-sentence investigation report and continuation of bail. At this point, Spence's counsel addressed the court:

"I appreciate Your Honor calling upon me at this stage of the proceedings. I want the record to reflect something. When we adjourned yesterday I had moved for judgments of acquittal. I renewed my motions and told Your Honor when Your Honor asked me that I submitted as to the same argument on the motions that I had rendered at the conclusion of the trial as to the original motions for judgment

of acquittal, I didn't reargue the motion for judgment of acquittal. I might say this, I came to court this morning prepared to argue concerning the verdict.

THE COURT: Concerning what?

MR. FRIEDMAN: Concerning the verdicts. Now, I have never been granted the opportunity. Your Honor started to rule on the motions and continued on into the verdicts and I know that when I interrupt Your Honor, Your Honor doesn't care for that. I can understand that. I have never been given the opportunity to argue the verdicts in this case and I would ask the court to strike out these verdicts because otherwise I'm intending to file a motion for a new trial on that ground. I have never been called upon to argue those verdicts.

THE COURT: I'm sorry.

MR. FRIEDMAN: I had quite a bit that I had prepared to discuss this morning and there are quite a few items that I think Your Honor has not touched upon that deserve consideration.

THE COURT: I understood yesterday that you were simply submitting on the whole issue.

MR. FRIEDMAN: No. Your Honor, if you read the record —

THE COURT: The verdicts are —

MR. FRIEDMAN: — you will find that's a mistake.

THE COURT: The verdicts are stricken, Mr. Friedman. I'll be glad to hear from you.

MR. FRIEDMAN: Sir?

THE COURT: The verdicts are stricken, I'll hear from you.

MR. FRIEDMAN: Well, Your Honor, you have already rendered verdicts. I don't know how I can now get you to change those verdicts. I would ask —

THE COURT: Mr. Friedman —

MR. FRIEDMAN: — for a mistrial.

THE COURT: Do you want me to strike them or not?

MR. FRIEDMAN: Your Honor, I'll formally move for mistrial at this time.

THE COURT: I'll strike the verdicts. I'll be glad to hear from you, sir.

MR. FRIEDMAN: Well, Your Honor, I don't feel that if I argue the case at this time that I could possibly convince Your Honor contrary to what you have already explained. I don't see how that is possible. That's like saying go back to the jury and argue your case now after they have rendered verdicts of guilty.

THE COURT: Mr. Friedman, I'm not a jury and I note that I can be persuaded by argument and that I'm — if I am persuaded, it wouldn't be the first time because I've ruled against a previously taken position that I've had on other occasions. I strike the verdicts and deny the motion for mistrial and I'll be glad to hear whatever you have to say, sir.

MR. FRIEDMAN: If Your Honor please, I will first move for a mistrial at this time for the reason that I have not been afforded the opportunity to argue the verdicts prior to the entry of verdicts by this honorable court.

THE COURT: That motion is denied.

MR. FRIEDMAN: All right, sir. If that motion is denied, I wish to advise the court that I intend to file a motion for new trial on that ground.

Now, if the court insists that I argue —

THE COURT: Mr. Friedman, the matter is not ripe for a motion for new trial yet because the verdicts are stricken. Now, if you want to argue, fine. If you don't want to argue, that's up to you.

MR. FRIEDMAN: Well, if Your Honor please, I don't feel that argument is in order at this time after what the court has said concerning the verdicts but if the court insists on not granting my motion for mistrial, then I'll argue and I feel before I start that it's a waste of time. I don't know how else to put it.

THE COURT: Mr. Friedman, I'm not going to tell you what you should do or shouldn't do. If you want to argue, I'll be glad to hear it and I'll be glad to listen carefully to what you have to say.

MR. FRIEDMAN: All right.

THE COURT: If you don't want to argue, then you may very well forfeit your right to argue.

MR. FRIEDMAN: If Your Honor please, since I'm compelled to do so and I can't let my client down, I will argue the case."

Spence's counsel then proceeded to argue at length, during which the court questioned him on particular issues. At the end, the court noted:

"THE COURT: Let me say, Mr. Friedman, I've listened to your argument and I don't think there is any element of the offense or aspect of the testimony that I did not consider when I made my earlier comments."

After discussing several issues raised in closing argument by Spence, the court concluded:

"So, having considered your arguments, Mr. Friedman, I adopt by reference all of my previous comments and findings and now make a finding beyond a reasonable doubt that all the essential elements have been proved and the Defendant is therefore guilty . . . ."

From this lengthy discourse, several features emerge. First, although the trial juge mistakenly assumed that

Spence had concluded his case and had waived further closing argument, the error was clearly inadvertent. When the error was belatedly brought to the judge's attention, he struck the verdicts. Not satisfied, Spence moved for a mistrial, which was denied. It is evident from the transcript that the trial judge afforded Spence a meaningful opportunity to argue his case. That Spence was not ultimately successful with his argument does not mean that his effort was futile *ab initio.* Indeed, in his unsuccessful argument in support of his initial motion for acquittal, Spence raised the same points that he presented in his later closing argument.

I fully agree with the Court that the right of a state criminal defendant to effective assistance of counsel is guaranteed by both the federal and state constitutions; and that one component of that right is that counsel be afforded an opportunity to argue the merits of the case before a verdict is rendered. *Herring v. New York,* 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). Indeed, Maryland was one of the first jurisdictions to recognize the importance of the right in a court trial. *Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962). In *Yopps,* as we later pointed out in *Covington v. State,* 282 Md. 540, 386 A.2d 336 (1978), the defendant who was offended by the failure of the trial judge to permit closing argument on his behalf immediately protested. No such protest was raised in *Covington* and the claim of reversible error on appeal was denied.

Unlike the present case, the cases relied upon by the majority concerning violation of a defendant's right to closing argument involve an affirmative and intentional denial of any effective opportunity to argue. In *United States v. King,* 650 F.2d 534 (4th Cir. 1981), the trial judge, after rendering a verdict, gave defense counsel a chance to make closing argument in the following manner:

" 'THE COURT: Go ahead if you want to argue it. I have already made my finding. It's not going to change anything, Mr. Shapiro.

If you want to argue the case for the record, for the appeals, that's fine as far as I'm concerned. But this case has gone on. I have given you at least fifteen minutes to confer with your own clients in the courtroom here.

MR. SHAPIRO: Yes, sir.

THE COURT: And we have other people waiting here on drug charges and we have a number of cases that have to get on this afternoon.

MR. SHAPIRO: Well, certainly, I would have preferred to argue, but if it's not going to change the Court's mind, I don't see any reason, at this point, to do it.

THE COURT: It's not, based on the defendant's own statement.' "

*Id.* at 536.

In finding a violation of the defendant's right to counsel, and that the right had not been waived after the verdict was rendered, the court's rationale is enlightening:

"Technically, the magistrate did offer counsel the opportunity to exercise this right; however the magistrate unequivocally stated that a closing argument would not change his mind. This is not the kind of environment in which a defendant's interests can be effectively advocated. Because of the absence of any real opportunity to proceed with closing argument, we find the appellant did not waive this right. *United States v. Walls,* 443 F.2d 1220 (6th Cir. 1971)." *Id.* at 536-37.

*United States v. Walls,* 443 F.2d 1220 (6th Cir. 1971), is factually similar to *King.* In that case, the judge rendered a verdict and adjourned immediately after both sides concluded. After defense counsel noted the omission of closing argument, the record was reopened, but the judge stated that argument then would be futile, because he had already made up his mind. *Id.* at 1223. In *United States v.*

*Commonwealth of Pennsylvania,* 273 F. Supp. 923 (E.D. Pa. 1967), the trial judge cut off defense counsel's opening sentence of argument to announce the verdict, and thereafter prevented any meaningful comments. *Id.* at 924. In *People v. Diaz,* 1 Ill. App. 3d 988, 275 N.E.2d 210 (1971), the trial judge interrupted the proceedings three times to announce a guilty verdict before the defense had concluded its case. *See also Thomas v. District of Columbia,* 90 F.2d 424 (D.C. Cir. 1937); *Floyd v. State,* 90 So.2d 105 (Fla. 1956); *Commonwealth v. Richman,* 132 Pa. Super. 529, 1 A.2d 578 (1938). In *Commonwealth v. McNair,* 208 Pa. Super. 369, 222 A.2d 599 (1966), defense counsel requested and was refused the right of summation at the conclusion of the evidence. In response to the State's assertion that argument on post-trial motions was equivalent to a closing argument, the appellate court noted,

> "We cannot reasonably conclude that an argument made after a decision has been made is always as effective as it might have been if made before such time." *Id.* at 371, 222 A.2d at 600.

Most of the courts which have found a denial of the right to closing argument have done so where the defense requested and was explicitly refused an opportunity for summation. *See, e.g., Grigsby v. State,* 333 So.2d 891 (Ala. Crim. App.), *cert. denied,* 333 So.2d 894 (Ala. 1976); *In re F.,* 11 Cal.3d 249, 113 Cal. Rptr. 170, 520 P.2d 986 (1974); *State v. Moorcraft,* 319 So.2d 386 (La. 1975); *State v. Hollingsworth,* 160 La. 26, 106 So. 662 (1925); *People v. Thomas,* 390 Mich. 93, 210 N.W.2d 776 (1973); *Decker v. State,* 113 Ohio St. 512, 150 N.E. 74 (1925); *Ruedas v. State,* 586 S.W.2d 520 (Tex. Crim. App. 1979); *Walker v. State,* 133 Tex. Crim. 300, 110 S.W.2d 578 (1937); *Ferguson v. State,* 133 Tex. Crim. 250, 110 S.W.2d 61 (1937); *Anselin v. State,* 72 Tex. Crim. 17, 160 S.W. 713 (1913). *Cf. People v. Manske,* 399 Ill. 176, 77 N.E.2d 164 (1948) (refusal to hear closing argument not reversible error where such argument would not be helpful).

The only case that squarely states, at least in dicta, that announcing a verdict before closing argument is either made or waived is a *per se* violation of the right to counsel, requiring reversal, is *People v. Dougherty,* 162 Cal. Rptr. 277 (1980).[1] That case was ordered deleted from the California Appellate Reports, *see* 102 Cal. App. 3d 270, on direction of the California Supreme Court by order dated August 14, 1981, and thus its status as valid law is at best clouded. *Dougherty* has been criticized by other California appellate panels, and has not been followed, *In re Michael W.,* 175 Cal. Rptr. 886 (1981) (juvenile proceedings);[2] *People v. Manning,* 120 Cal. App. 3d 421, 174 Cal. Rptr. 625 (1981). In short, no state's highest court has gone as far as the majority does here.

Maryland case law does not counsel the result reached by the majority. In *Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962), the trial judge, over timely objection, refused to permit closing argument, commenting that it wouldn't change his mind. In *Rome and Modo v. State,* 236 Md. 583, 204 A.2d 674 (1964), "the court inadvertently announced the verdict before counsel had finally ascertained whether the defendants desired to testify." 236 Md. at 586. The premature verdicts apparently were then stricken. The court concluded that "the untimely announcement of the verdict was not prejudicial," *id.* at 587, and that since no request was made for closing argument, in light of the earlier opportunity to argue motions for acquittal, "the reinstatement of the verdicts of guilty . . . was not prejudicial . . . ." *Id.* at 588. In *Moore a/k/a Smith v. State,* 7 Md. App. 330, 254 A.2d 717 (1969), the Court of Special Appeals found no waiver of the right to closing argument from the absence of a specific request, but did not address the question of whether, in the face of such a request, the trial court could remedy the omission. The Court of Special Appeals found a denial of such a

---

1. There was no request for argument in *Dougherty* at any point. Thus, the court's comments were directed to a factual situation that was not presented in the case.

2. *See* 122 Cal. App. 3d 349 (deleted on direction of Supreme Court by order dated October 28, 1981).

specific request in *Baines v. State,* 37 Md. App. 505, 378 A.2d 177 (1977). This Court overruled *Moore* in *Covington v. State,* 282 Md. 540, 386 A.2d 336 (1978), holding that denial of the right to closing argument is not preserved for appeal unless a timely objection is made at trial. In dissent, Judge Eldridge argued that, in contrast to the implication in *Covington* that post-verdict argument might satisfy the right, any argument given after a verdict is rendered would not satisfy the right to closing argument. Until today, such has not been Maryland law.

Implicit in *Covington* is the proposition that there must be a timely objection to a denial of the right to closing argument. Indeed, the Court there observed, *id.* at 543, that "it is incumbent upon a litigant to make known to the court an objection to the action of the court at the earliest practicable opportunity." Even errors of constitutional dimension may be waived by failure to interpose a timely objection at trial. *See, e.g., Hewitt v. State,* 242 Md. 111, 218 A.2d 19 (1966). The principle involved is that such procedural errors are not reviewable unless the trial court is first given the opportunity to correct an inadvertent oversight. If the defendant neglects to object at all, or if he withholds his objection until the error is no longer correctable, he cannot assert the error on appeal. Here, Spence's counsel waited until the very end of an extended series of findings by the trial court before objecting. The belated objection, quite simply, was untimely under *Covington.*

In a case factually similar to *Covington,* the United States Court of Appeals for the Third Circuit also held that the denial of closing argument was not preserved for appeal absent a timely objection. *United States ex rel. Spears v. Johnson,* 463 F.2d 1024 (3d Cir. 1972), *rev'g* 327 F. Supp. 1021 (E.D. Pa. 1971). In noting that the defendant and his counsel had failed to object at the trial, apparently for tactical reasons, the court commented:

> "[W]e believe that it was incumbent upon them under these circumstances to make a timely objection to the trial judge's alleged refusal to permit a

closing summation, in which case the defect could have been remedied without substantial prejudice to either Spears or the Commonwealth." *Id.* at 1026.

*See West v. United States,* 399 F.2d 467 (5th Cir. 1968) (no error where no request or timely objection); *People v. Berger,* 284 Ill. 47, 119 N.E. 975 (1918) (no error where counsel delayed request until after verdict announced).

Underlying the majority's decision is the assumption that a trial judge, once having prematurely rendered a verdict, is unable to fairly consider further argument in the case. Certainly there are factual settings where either the judge's own words or actions at trial indicate a strong prejudicial bias, as typified in the cited cases. However, the present case indicates an *inadvertent* rather than an *intentional* denial, and there was a good-faith effort by the trial judge to correct the procedural deficiency. To say, as the majority does, that the trial judge cannot strike the premature verdict and consider the defendant's closing arguments flies in the face of our reasoning in *State v. Hutchinson,* 260 Md. 227, 271 A.2d 641 (1970). In that case, the trial judge, sitting as the trier of fact, admitted a confession taken in violation of *Miranda* guidelines. Subsequently, he realized his mistake and excluded the confession, declaring that he would completely disregard it in reaching his verdict. The Court of Special Appeals reversed the conviction, 9 Md. App. 41, 262 A.2d 321, on the ground that knowledge by the judge of the confession deprived the defendant of a fair trial. In reversing, we said:

"This assumption of the [Court of Special Appeals] might be valid were we to first, not believe the trial judge's statement that he was disregarding and eliminating from his deliberations the substance of the inadmissible confession, and secondly, choose to ignore the professional expertise, experience, and judicial temperament with which our legal system has inherently invested a trial judge *vis a vis* a jury comprised of laymen. It is true that

judges, being flesh and blood, are subject to the same emotions and human frailties as affect other members of the specie; however, by his legal training, traditional approach to problems, and the very state of the art of his profession, he must early learn to perceive, distinguish and interpret the nuances of the law which are its 'warp and woof.' " *Id.* at 233.

Today, the Court prescribes an inflexible and absolute rule that, notwithstanding the lack of timely objection, where a trial judge in a nonjury case inadvertently renders a premature verdict, which is later stricken, he is thereafter incapable, in any and all circumstances, of fairly considering closing argument. I simply am unable to prescribe to such an unwise rule.

I am authorized to state that Judges Smith and Rodowsky join in this dissent.