**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Felix WALLS, Defendant-Appellant. No. 20771.**

United States Court of Appeals, Sixth Circuit.
June 14, 1971.

Wilfred C. Rice, Detroit, Mich., for appellant.

Marilu Marshall, U. S. Department of Justice, Detroit, Mich., Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on the brief; Laurence Leff, Sp. Atty., U. S. Department of Justice, Detroit, Mich., of counsel, for appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE, and McCREE, Circuit Judges.

McCREE, Circuit Judge.

Appellant was convicted on June 15, 1970 on both counts of an indictment charging violations of narcotics laws of the United States,[1] and was sentenced to serve concurrently ten years imprisonment imposed on each count. In this appeal, he asserts that the District Court, sitting without a jury, committed several errors which require reversal of his conviction. We hold that it was reversible error for the Trial Judge to view the scene of the alleged offense without permitting appellant or his attorney to attend and to preclude summation and closing argument by defense counsel.

Walls was arrested in Detroit, Michigan, during the early morning hours of April 9, 1969, as he emerged from a house which was under the surveillance of federal agents. Arrested with him were James Riley, Jr., who proved to be a police informer, and Sylvia Laster, who occupied an upstairs flat in the house. At the time of the arrest, Riley held a paper bag containing heroin. The cocaine specified in the indictment was subse-

---

1. THE GRAND JURY CHARGES IN COUNT ONE:

That on or about April 9, 1969 * * * JAMES RILEY, JR., FELIX WALLS and SYLVIA LASTER, defendants herein, did unlawfully and knowingly purchase a quantity of narcotic drugs, to wit: approximately 3,092 grams of heroin and 23.58 grams of cocaine, not in or from the original stamped package and not having on it the appropriate tax-paid United States Internal Revenue stamps, as required by law; in violation of Section 4704(a), Title 26, United States Code.

THE GRAND JURY FURTHER CHARGES IN COUNT TWO:

That on or about April 9, 1969 * * * JAMES RILEY, JR., FELIX WALLS and SYLVIA LASTER, defendants herein, did unlawfully acquire, conceal and have in their possession, after being imported and brought into the United States a quantity of narcotic drugs, to wit: approximately 3,092 grams of heroin well knowing the aforesaid heroin to have been unlawfully imported and brought into the United States in violation of the provisions of the Act of Congress, approved February 9, 1909, as amended, and not under any regulations prescribed by the Commissioner of Narcotics; in violation of Section 174, Title 21, United States Code.

quently found during a search of the upstairs flat where Laster was arrested.

The surveilling agents testified that they saw Walls hand the heroin bag to Riley as the two men emerged from the house. This testimony was crucial to the Government's case because Riley, who presumably would have supplied this evidence, was unavailable for trial. The arresting agents apparently relied upon that transfer, because it corroborated Riley's earlier information that Walls and Laster illegally possessed narcotics, and provided a basis for arresting Walls and Laster without a warrant, and for conducting the search incident to those arrests. Appellant vigorously contended that it would have been impossible for the agents to have seen a transfer on the porch because of darkness, trees, and other impediments.

■ At trial, on June 10, 1970, defense counsel moved that the judge, in the company of counsel, view the scene to see whether it would have been possible for the agents to have seen the porch from their vantage point. The prosecutor objected, and pointed out that there had been no showing that the premises were in the same condition at the time of trial as they had been on April 9, 1969. The court denied the motion. However, on June 11, after having heard the testimony of the principle defense witness on June 10, the court stated:

> The only issue that I can see and I think it's the one the Court of Appeals would want to know about, and that is the issue that you have raised now that no witness would be able to see that doorway or anyone coming out of that doorway by reason of obstructions that exist at the place.

On June 12, defense counsel renewed his request that the court view the premises. In reply the court stated:

> Well, I would suspect that now that we have got some time that probably the Court will inspect the premises. I will advise you when I have. I am going to do it alone, not with anyone else and in my own manner. I am not going to testify as to what I see. It will be involved in my findings of facts.

Thereafter, a defense witness testified that he was familiar with the house in question and its surroundings, and that the agents would have been unable to see the porch, in part, because of a large tree which stood in front of the house and had been removed after the event and prior to trial. On Monday, June 15, the next day of trial, the court informed the parties that he had viewed the scene.

> Friday afternoon, with my Bailiff, I drove out to the residence * * * and there viewed the * * * scene and placed myself in the position where I would judge the driver, from the evidence, sat at the time of the surveillance and made observation and noted, too, that there was a street light directly opposite the flat here involved, * * *.

Shortly thereafter, Walls completed his testimony as the final defense witness and, after both sides rested, the court stated:

> The Court having heretofore viewed the scene, as I indicated, together with my Bailiff and the testimony that I wish to make a written finding of fact to, * * *.

> It is the finding of the Court, as the finder of the fact, that the Defendant is guilty beyond a reasonable doubt.

> * * * * * *

> We stand adjourned.

A majority of the state courts which have decided the issue have held that a jury view is a stage of the trial at which the accused has a right to be present. Annot., 90 A.L.R. 597 (1934); Annot., 30 A.L.R. 1357 (1924). The courts of three states in this circuit which have considered the issue have so held, Lee v. Commonwealth, 262 Ky. 15, 89 S.W.2d 316 (1936); People v. Connor, 295 Mich. 1, 294 N.W. 74 (1940); Colletti v. State, 12 Ohio App. 104, 31 Ohio C.C.R. (n.s.) 81 (1919); and one of those states has established by statute

the right of the accused to attend the view. Ohio Rev.Code § 2945.16.

The principles applicable to a view by a judge sitting without a jury are not substantially different. The weight of authority is that it is reversible error for a trial judge sitting without a jury to base his findings or decision in whole or in part upon his personal observations or inspection. Annot., 97 A.L.R. 335 (1935). And it has been held that where a statute makes provision for a jury view, but not for a view by a judge sitting without a jury, it is reversible error for a trial judge sitting without a jury to view the premises without the consent of the parties. Annot., 124 A. L.R. 841, § IId (1940).[2]

Some courts have characterized information derived from a view of the scene as evidence. Others have treated a view merely as a procedure whereby the factfinder is enabled to better understand the evidence adduced at trial. This division of authority persists despite the statements of eminent scholars that a view constitutes the taking of evidence. 4 J. Wigmore, Evidence, §§ 1150–1151, 1163–69 (3d ed. 1940); C. McCormick,

Evidence, § 183 (1954). However, it can at least be stated that, however a view is characterized, "its inevitable effect is that of evidence. * * *" Snyder v. Massachusetts, 291 U.S. 97, 121, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Accordingly, it was reversible error for the court to deny appellant and his attorney the opportunity to attend the view to insure against the intrusion of prejudicial error.[3]

We also hold that the court erroneously denied defense counsel an opportunity to argue his case at the close of proofs. Immediately following the conclusion of the case for the defense, the court stated his finding of guilt, and court was adjourned. Defense counsel thereafter called the omission of argument to the court's attention, and the record was reopened. However, the court correctly stated that argument then would be futile because he had made up his mind. Preclusion of closing argument denied appellant the effective assistance of counsel. Thomas v. District of Columbia, 67 App.D.C. 179, 90 F.2d 424, 428 (1937); United States ex rel. Wilcox v. Com. of Pennsylvania, 273

2. Similar principles apply to views by administrative tribunals, Annot., 18 A.L.R. 2d 552, § 7 (1951), and to views by arbitrators. Annot., 27 A.L.R.2d 1160 (1953).

3. The Supreme Court's decision in Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), does not indicate a contrary result. There the Court considered the contention that the Constitution of the United States mandated the presence of an accused at a view during a state prosecution. Counsel for the parties attended the jury view as showers and a transcript was made of the proceedings at the view. In a 5–4 decision, the Court held that due process had not been violated. In dissent, Mr. Justice Roberts stated:

Many decisions hold that [the] accused may waive the privilege [of being present at a jury view]; but an examination of the cases discloses none (with a single possible exception) where a denial of his request to accompany the jury on the view has not been held reversible error. And the statements that a view is not a part of the

trial or that it is not the taking of evidence, and denying, on that ground, the defendant's right to be present, are invariably found in cases where the defendant requested the view and did not ask to accompany the jury, or waived either expressly or by conduct his right so to do. 291 U.S. at 134–135, 54 S.Ct. at 343 (footnote omitted).

Here we exercise our supervisory authority over the administration of criminal justice in the District Courts of this Circuit, see McNabb v. United States, 318 U.S. 332, 341, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and we do not reach the Constitutional issue presented in *Snyder*. Accordingly, we need not decide whether evolving Constitutional principles have eroded the basis for the majority's position in *Snyder*, or whether the Court in that case would have found error of Constitutional dimensions if Snyder's counsel had not attended the view. *See, e. g.,* United States v. Wade, 388 U.S. 218, 223–227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

F.Supp. 923, 925–926 (E.D.Pa.1967). This principle has also been widely recognized by state courts which have considered it. *See, e. g.*, Yopps v. State, 228 Md. 204, 178 A.2d 879 (1962); Decker v. State, 113 Ohio St. 512, 150 N.E. 74 (1925); Annot., 38 A.L.R.2d 1396, § 2[b] (1954). *See generally* Annot., 6 A.L.R.3d 604 (1966).

We find it unnecessary to consider appellant's other assignments of error. The judgment is reversed and the case is remanded for a new trial.

Reversed and remanded.