NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0464n.06

Case Nos. 19-1302/1304

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**FILED**
Aug 05, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| <u>19-1302</u> | ) | |
| DEMETRIUS WILLIAM EDWARDS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| SHERRY BURT, Warden, | ) | |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| <u>19-1304</u> | ) | |
| BRYANT LAMONT ROYSTER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN LINDSEY, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

_____/

**Before: GUY, SUTTON, and GRIFFIN, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Following a joint bench trial in state court, Demetrius Edwards and Bryant Royster were convicted of murder in the shooting death of Cedell Leverett as he sat in his car outside a shopping mall in Michigan. After Edwards and Royster exhausted their appeals in state court, they each filed a habeas petition in federal court. Denying

their claims in separate albeit overlapping orders, the district court granted certificates of appealability on their common claim that the absence of defense counsel during the trial judge's solo visit to the crime scene was a *per se* violation of the Sixth Amendment. Concluding that the state court's rejection of this claim was neither contrary to nor an unreasonable application of Supreme Court precedent, we affirm.

**I.**

**A.**

The Michigan Court of Appeals, which issued the last reasoned state court decision on the matter, explained that, on September 24, 2010,

> Edwards was free on a GPS tether to "settle [his] affairs," having been sentenced just the day before for a prior armed robbery conviction. Apparently, those affairs included a trip to the Eastland Mall with Royster and two acquaintances, Devante Smith and Jaisaun Holt.
>
> Around 8:30 p.m., the decedent, Cedell Leverett, was sitting in the driver's seat of his Mercedes parked in the valet area of Eastland Mall. Another car was parked nearby. Deborah Gaca observed Edwards get out of the other car, and run towards the valet area in a crouched position. Edwards was holding a gun. Royster, who was standing outside the driver's side of the other car, yelled "Pop him, pop that mother f * * * * * good." Edwards then fired four shots into the Mercedes at close range, killing Leverett. Edwards ran back to the other car, which was backing out, and fled the scene. Police . . . found over $3,000 in the decedent's pocket. Corroborating Edwards's and Royster's presence at the Eastland Mall during this time were a surveillance video and Edwards's tether records.
>
> Holt confirmed in a police interview (which he later disavowed at trial) that Edwards intended "to get [the decedent's] glasses and he hit him," before Royster whisked them away in the car. Although Holt also elaborated that Edwards claimed to have shot the decedent after the decedent brandished a firearm, police found no weapons in or around the Mercedes or on the decedent's person during their investigation immediately after the shooting. Devante claimed the others left the Eastland Mall without him.
>
> Deonte Smith, Devante's brother, . . . stated [in a police interview] that he saw defendants, Holt, and his brother (Devante) at a high school football game sometime after the shooting. At the game, "they" told Deonte they had seen a man

walking around the Eastland Mall with a diamond watch and $12,000 to $15,000 cash in his pocket. Holt kept tabs on this man and reported to Edwards by phone. Edwards "bragged" to Deonte that he tracked the man outside and tried to rob the man of his watch, but because the man was reaching for something, Edwards shot him. Others at the football game told Edwards he was stupid for not getting anything.

[Edwards was arrested] a week after the shooting [when] a security officer at the Northland Mall in Southfield saw Edwards toss a gun under an SUV in the parking lot while fleeing a fight. Edwards was arrested at the scene. Royster was apparently arrested shortly thereafter. Subsequent tests of the gun revealed that this weapon had fired the shell casings and bullet fragments found in and around the Mercedes and inside [Leverett].

*People v. Edwards, et al.*, Nos. 318000/318025, 2015 WL 1069275, at *1-2 (Mich. Ct. App. Mar. 10, 2015) (per curiam) (footnote omitted), *lv. to appeal denied*, 870 N.W.2d 67, 67 (Mich. Oct. 15, 2015) (mem.). Someone who had been with Leverett on the day of the shooting gave police a diamond watch and sunglasses, which Leverett's daughter said she had seen Leverett wearing earlier on the day he was killed. *Id.* at *2.

Deborah Gaca, who worked at a store in the Eastland Mall, testified that she walked an elderly customer out of the mall entrance where she witnessed the shooting. Shown photographs of the area, Gaca was questioned about what she saw, where she was standing, and the lighting conditions at the time of the shooting. On the next day of trial, the judge announced that "the attorneys would accompany [him] to the crime scene" at lunch on the following day. *Edwards*, 2015 WL 1069275, at *7. When defendants' attorneys "indicated their clients' desire to [also] attend this viewing, the [judge] canceled the visit unless defendants "change[d] their mind."" *Id.* (third alteration in original). That exchange occurred on the morning of July 30, 2013.

The defendants apparently relented, as two days later the judge described a trip to the crime scene that took place without Edwards or Royster. Although the defendants were not there, their attorneys were both present along with the judge, the prosecutor, the eyewitness, and others.

A record was made of that visit with the concurrence of defense counsel.  In particular, Gaca indicated where she had been standing when the shooting occurred and explained that she did not move except to back up against the pole when she saw the gunman running back to the getaway car.  The judge would later find that Gaca stood 50 feet away from the shooting—not 20 feet as she had testified.  But that first crime scene visit was not the basis of the claim here.

Instead, after the record was made of the first visit, the trial judge disclosed in open court that he had also made a separate nighttime visit to the crime scene by himself.

> THE COURT:  Anything else?  And I will say that the night before I, myself, went out just to look at the lighting around the place.  I went at approximately 10:00 P.M. to see what it looked like, [what] the lighting was like at the mall from the area where we were standing yesterday.  Anything else to put on the record regarding that?
>
> [Prosecutor]:  Not regarding that, Your Honor.
>
> THE COURT:  Okay.
>
> [Counsel for Royster]:  No, Your Honor.
>
> [Counsel for Edwards]:  No.

(Tr. Trans. 8/1/13, pp. 37-38.)  As this exchange reflects, defendants' attorneys did not object to the judge's solo crime scene visit on any basis.  Nor did defense counsel lodge any objection after the judge rendered his oral decision, which briefly referenced both crime scene visits and his own observation that the area "was very well lit."  (Tr. Trans. 8/5/13, p. 59.)  Even when the judge asked counsel if there was anything else to put on the record, both defense attorneys responded that they had nothing to add.  (*Id*. at 63.)[1]

---

[1]Although it is not entirely clear which visit occurred first, the state court identified the visit with defense counsel as the "first visit" and the trial judge's solo visit as the "second."  Because the sequence is immaterial to this appeal, the visits are referred to the same way here.

Both Edwards and Royster were found guilty of first-degree felony murder and sentenced to life without parole. Edwards was also convicted of two related firearm offenses for which he received additional terms of imprisonment. The Michigan Court of Appeals affirmed in a consolidated opinion, and the Michigan Supreme Court denied leave to appeal.

**B.**

On direct appeal, Edwards and Royster argued, among other things, that the two crime scene visits violated their rights in a number of ways. The Michigan Court of Appeals found that all claims pertaining to the first visit had been waived because the defense attorneys were present, agreed to the questions posed to the eyewitness, and stipulated to the admission of her responses into evidence. *Id.* at *7 & *12. Aside from that waiver, the court also declared that its review of the crime scene visits "would be for outcome determinative error" because "Edwards failed to object to either visit" and, more specifically, "Royster lodged no objection [to the second visit] on [his] novel theory (or on any other ground)." *Id.* at *7 & *12 (citing *People v. Carines*, 597 N.W.2d 130, 138-39 (Mich. 1999) (holding that the plain-error rule extends to unpreserved claims of constitutional error)).[2]

Having identified plain error as the standard of review, the state court proceeded to consider what rights a criminal defendant has "[w]ith respect to the fact-finder's viewing of a crime scene." *Id.* at *7. Specifically, the court said that, at least where there is a jury, "the viewing constitutes a critical stage of a criminal proceeding which a criminal defendant has the right to attend with the

---

[2]Petitioners insist on appeal that defense counsel did, in fact, lodge an objection that made repeated objections unnecessary. Not only was that argument newly raised in reply, but it is also inconsistent with the undisputed record. Defense counsels' initial objection to conducting the first crime scene visit *with counsel* but without the defendants simply could not substitute for an objection when the trial judge disclosed that he had made an unconsented to solo visit to the crime scene without the presence of the defendants *or* their counsel.

assistance of counsel." *Id*. (citing *People v. Kurylczyk*, 505 N.W.2d 528, 531 (Mich. 1993)

(discussing Sixth Amendment right to have counsel at photographic lineup), and *People v. Kent*,

404 N.W.2d 668, 674 (Mich. App. 1987) (identifying a defendant's statutory right to be present

during a jury view of the crime scene as recognized in *People v. Mallory*, 365 N.W.2d 673, 680-

83 (Mich. 1984))). The state court then assumed that the same would be true when the judge in a

bench trial views "a crime scene in the absence of [a] defendant or his counsel." *Id*. (citing *United

States v. Walls*, 443 F.2d 1220, 1222-23 (6th Cir. 1971), and *Payne v. United States*, 697 A.2d

1229, 1234-35 (D.C. 1997)). Lastly, the court added that Confrontation Clause protections are

neither absolute nor as broad in scope as the right to be present at trial. *Id*.

Turning to Edwards's claims, the state court found no error requiring reversal. For the first

visit, any error "certainly was not outcome determinative in light of the overwhelming evidence

against Edwards." *Id*. at *8. As to the second visit, the state court concluded:

> Likewise, even if the court's second viewing were improper, it did not
> violate Edwards's substantial rights. The court indicated that its only purpose was
> to confirm the lighting of the parking lot. That fact was of little consequence in
> light of the other incriminating evidence, especially the surveillance video, tether,
> and forensic evidence. Again, Edwards was not prejudiced, and, not surprisingly,
> he makes no claim that he was actually innocent or that this fundamentally affected
> the proceedings in an adverse way.

*Id*. This plain error review would seem to encompass all the claims made with respect to the

judge's solo visit to the crime scene—including the absence-of-counsel claim. Yet, in the next

paragraph, the state court separately rejected the argument that the absence of counsel was

structural error requiring automatic reversal under *United States v. Cronic*, 466 U.S. 648, 659

(1984). *Id*.

That detour, although brief, expressed agreement with the post-*Cronic* decisions of "every

federal circuit court of appeals" that have held "an absence of counsel at a critical stage may, under

some circumstances, be reviewed for harmless error." *Edwards*, 2015 WL 1069275, at \*8 (quoting

*People v. Murphy*, 750 N.W.2d 582, 586 (Mich. 2008) (Markman, J., concurring separately)

(noting citation to, among others, *Satterwhite v. Texas*, 486 U.S. 249 (1988), *Ellis v. United States*,

313 F.3d 636, 643 (1st Cir. 2002), and *United States v. Lampton*, 158 F.3d 251, 255 (5th Cir.

1998)). Without further analysis, the Michigan Court of Appeals concluded that the "facts fall

squarely in line with this authority and we see no compelling reason to deviate today." *Id*. As a

result, reversal was "not warranted." *Id*.

Later in the opinion, Royster's parallel absence-of-counsel claim was also rejected. "Like

Edwards, Royster also challenges the trial [judge's] second viewing of the crime scene, with the

added wrinkle of an alleged Confrontation Clause violation." *Id*. at \*12. Because Royster lodged

no objection below, the Michigan Court of Appeals said it was "looking for outcome determinative

error that adversely affected the proceedings or resulted in the conviction of an innocent

defendant." *Id*. (citing *Carines*, 597 N.W.2d at 143). Referring back to its earlier discussion of a

criminal defendant's rights, the court agreed that the judge's "second viewing of the crime scene

was not only erroneous, but imprudent." *Id*. Assuming error, the state court found that Royster

could not "get around the mountain of incriminating evidence against him" and added that,

"besides our prior analysis," Royster's "vulgar encouragement to Edwards" "eradicates any

pretense of actual innocence especially considering that the trial court's second visit was to view

the lighting in the parking lot." *Id*. Finally, in discussing Royster's "near carbon-copy subset of

the issues his codefendant present[ed] on appeal," the state court again applied plain error review.

Addressing the two crime scene visits, the court stated that, "as we have repeatedly concluded, the

evidence of Royster's guilt absent these visits was clear and he is not actually innocent." *Id*.

The district court found that procedural default barred review of petitioners' claim that the absence of counsel during the second crime scene visit constituted a *per se* violation of the Sixth Amendment. We review the district court's legal conclusions *de novo* and any findings of fact for clear error. *See Robinson v. Howes*, 663 F.3d 819, 825 (6th Cir. 2011).

## II.

A claim that was procedurally defaulted in state court cannot be reviewed on the merits unless the default is excused by showing either cause for the default and actual prejudice from the constitutional violation, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when: "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citation omitted).

The district court found procedural default based on failure to comply with Michigan's contemporaneous objection rule, which we have recognized as both "a well-established and normally enforced procedural rule." *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011). At the outset, petitioners insist that their *Cronic* claim could not be defaulted in this way because "a per se violation of a defendant's right to effective assistance of counsel does not require the defendant to preserve the error below." *Hunt v. Mitchell*, 261 F.3d 575, 582 (6th Cir. 2001) (citing *Powell v. Alabama*, 287 U.S. 45, 57-58 (1932)). But petitioners misread *Hunt*, which did not involve procedural default. In fact, this court rejected the very same argument in *Carruthers v. Mays*, 889 F.3d 273, 289 (6th Cir. 2018). There, Carruthers argued "that a claim of total deprivation of

counsel at a critical stage in the criminal proceedings cannot be defaulted because it alleges structural constitutional error." *Id*. As we explained, however, "[f]orfeiture and procedural default are distinct concepts," so "proclaiming that a right may not be forfeited or waived does not necessarily mean the right may not be procedurally defaulted." *Id*. (citing *Hodges v. Colson*, 727 F.3d 517, 540 (6th Cir. 2013)).

Under Michigan law, the failure to object limits an appellate court to Michigan's version of plain error review. *Carines*, 597 N.W.2d at 138-39; *see also People v. Vaughn*, 821 N.W.2d 288, 303-04 (Mich. 2012). Enforcement of a state court's contemporaneous objection rule is "an adequate and independent state ground barring federal habeas review," and a state court's plain error review does not revive a procedurally defaulted claim. *Awkal v. Mitchell*, 613 F.3d 629, 648-49 (6th Cir. 2010) (en banc) (citation omitted); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). But for procedural default to bar habeas review, the state court must have "clearly and expressly" relied on the procedural bar in rejecting the claim. *See Smith v. Cook*, 956 F.3d 377, 385 (6th Cir. 2020) (quoting *Coleman*, 501 U.S. at 734). We cannot say that the state court did so here.

Certainly, the state court found that defense counsel failed to object to the second crime scene view on any of the grounds raised on appeal. Broadly invoking the contemporaneous objection rule, the state court lumped all the claims concerning the crime scene visits together and found that neither Edwards nor Royster had demonstrated "outcome determinative error." That reliance on the procedural bar would seem to encompass the absence of counsel at the second crime scene visit—except that the court proceeded to specifically reject the claim that the denial of counsel was structural error requiring automatic reversal under *Cronic*. What to make of this detour is not clear.

Was it meant to be part of the plain error review?  It was not framed as a prong of Michigan's plain error review.  Nor was it cast as an alternative holding, as the state court had done with respect to the first crime scene visit.  Instead, the court addressed the claim of structural error under *Cronic*, but concluded that the absence of counsel in this case was subject to harmless error review.  *Edwards*, 2015 WL 1069275, at *8.  This explicit rejection of presumed prejudice under *Cronic* and application of harmless error review—standing apart from and untethered to the state's procedural bar—leaves us unable to say on which ground or grounds the state court relied in rejecting the claim of a *per se* violation of the Sixth Amendment.  Because the last reasoned state court decision did not appear to clearly and expressly rely on the state procedural rule, habeas review is not barred.  *Smith*, 956 F.3d at 385; *see also Clinkscale v. Carter*, 375 F.3d 430, 441-42 (6th Cir. 2004).[3]

## III.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs the scope of our review only if the claim has been "adjudicated on the merits in State court."  *Johnson v. Williams*, 568 U.S. 289, 292 (2013) (quoting 28 U.S.C. § 2254(d)).  We presume that a claim was adjudicated on the merits when the state court denies relief on a properly presented federal claim.  *See Harrington v. Richter*, 562 U.S. 86, 99 (2011).  That presumption is a strong one that may be rebutted only in limited circumstances, such as "when there is reason to think some other explanation for the state court's decision is more likely."  *Id*. at 99-100.  For instance, a petitioner

---

[3]Even if this was not the case, we would not be required to address procedural default "before deciding against the petitioner on the merits."  *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (quoting *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)).

may rebut the presumption "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court." *Johnson*, 568 U.S. at 303.

Royster contends that his *Cronic* claim was "inadvertently overlooked" since it was not specifically mentioned in the portion of the state court decision addressing his arguments on appeal. But "the presumption prevails even when the state court's opinion wholly omits discussion of the federal claim." *Smith*, 956 F.3d at 386 (citing *Johnson*, 568 U.S. at 304). Nor is this case like *Brown v. Romanowski*, where the presumption was rebutted by evidence that the state court addressed *every* claim made in the original post-conviction motion but did not address *any* of the claims raised in the amended petition. 845 F.3d 703, 711-12 (6th Cir. 2017). Here, the state court recognized that Royster was making the same claims as Edwards with respect to the second crime scene visit. And, the fact that the state court referred back to its earlier analysis undercuts the conclusion that the absence-of-counsel claim was inadvertently overlooked.

Seeking to avoid AEDPA deference, both petitioners argue that their *Cronic* claim was not adjudicated on the merits because the claim was purportedly reviewed for plain error. This court "has not been a paragon of clarity about whether a state court's plain-error ruling amounts to a ruling on the merits under AEDPA." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). But, as we explained in *Stewart*, AEDPA governs review of "a state court's plain-error analysis if it 'conducts any reasoned elaboration of an issue under federal law.'" *Id*. (quoting *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009)). Petitioners point to several pre-*Fleming* decisions as controlling, but as *Fleming* explained and *Stewart* reiterated, those earlier decisions "stand only for the proposition that a state court's plain-error analysis cannot resurrect an otherwise defaulted claim." *Id*. To the extent that the state court may have applied plain error review to petitioners' *Cronic* claim, that would not have necessarily precluded it from being adjudicated on the merits.

*See Phillips v. Hoffner*, 755 F. App'x 481, 498-99 (6th Cir. 2018) (Kethledge, J., concurring in judgment) (explaining that *Stewart* "resolves the ambiguity").

Finally, the presumption prevails even when the state court imperfectly analyzes a petitioner's federal claim. *See Smith*, 956 F.3d at 386. Here, the state court described a jury's view of a crime scene as a critical stage of the proceeding to which a criminal defendant has a "right to attend with the assistance of counsel." *Edwards*, 2015 WL 1069275, at *7. In support, the court's citation coupled cases recognizing a defendant's statutory right to be present under Michigan law and describing generally the Sixth Amendment right to counsel at a critical stage of the criminal proceeding. *Id.* Notwithstanding the state court's purported application of plain error review, the fact remains that the decision specifically rejected the claim that the absence of counsel required automatic reversal under *Cronic*. *Id.* at *8. And, any doubt that the state court was addressing the core of the claim under federal law is dispelled by its endorsement of the view that, as "every federal circuit court of appeals has stated, post-*Cronic*, [] an absence of counsel at a critical stage may, under some circumstances, be reviewed for harmless error." *Id.* (citations omitted). We consider the state court's decision rejecting the claim of structural error under *Cronic* to be a merits adjudication for purposes of AEDPA.

**IV.**

Under AEDPA, federal habeas relief may not be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Petitioners did not argue that the decision was factually erroneous, so our task is to measure the state court's decision against the Supreme Court's holdings at the time of that decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

**A.**

"[T]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process," as well as the right to proceed without counsel when done so voluntarily and intelligently. *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) (per curiam) (citation omitted); *see also United States v. Gouveia*, 467 U.S. 180, 188 (1984) (holding "right to counsel does not attach until the initiation of adversary judicial proceedings"). A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice under *Strickland*, and even *Cronic* found that it was error to have reversed the defendant's conviction without demonstrating prejudice under *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (discussing *Strickland v. Washington*, 466 U.S. 668 (1984), and *United States v. Cronic*, 466 U.S. 648, 659 (1984)). In *Cronic*, however, the Supreme Court also identified three circumstances in which the denial of counsel would be "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id*. at 695 (quoting *Cronic*, 466 U.S. at 658-59). This *Cronic* structural-error exception is "narrow," *Florida v. Nixon*, 543 U.S. 175, 190 (2004), as "most constitutional errors can be harmless," *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991).

Petitioners invoked the first of the *Cronic* circumstances: namely, "when there is a 'complete denial of counsel' at, or counsel is 'totally absent' from, a 'critical stage of the proceedings.'" *Clark v. Lindsey*, 936 F.3d 467, 470 (6th Cir. 2019) (quoting *Cronic*, 466 U.S. at 658-59 & n. 25). The denial of counsel must occur during a "critical stage," which is a term the Court has used "to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused." *Bell*, 535 U.S. at 696 (citing *Hamilton v. Alabama*, 368 U.S. 52 (1961) (no counsel present at arraignment), and *White v. Maryland*, 373 U.S. 59 (1963) (per

curiam) (no counsel present at entry of plea)).  Also, to warrant a presumption of prejudice, there

must be a "complete" denial of counsel.  *Cronic*, 466 U.S. at 659; *see also Penson v. Ohio*, 488

U.S. 75, 88 (1988) (withdrawal of counsel on appeal).  Although *Cronic*'s rule for presuming

prejudice is settled, the precise contours of when it applies are not.  *See, e.g.*, *Woods v. Donald*,

575 U.S. 312, 317-18 (2015) (per curiam), *rev'g Donald v. Rapelje*, 580 F. App'x 277 (6th Cir.

2014).[4]

### B.

A state court's decision is contrary to clearly established federal law when it "applies a rule

that contradicts" or "confronts a set of facts that are materially indistinguishable from [the Supreme

Court's] precedent" but reaches a different result.  *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  The Supreme Court has warned that this standard cannot be met by framing the issue at

too high a level of generality.  *See Woods*, 575 U.S. at 317-18 (citing *Lopez v. Smith*, 574 U.S. 1,

5-6 (2014) (per curiam)).

There is no dispute that the Supreme Court has never held that the absence of counsel

during a crime scene view by the fact-finder—whether a judge or jury—constitutes a complete

denial of counsel at a critical stage of the criminal proceeding for which prejudice must be

presumed.  Because no Supreme Court decision has confronted that specific question, the state

court's rejection of the claim of *Cronic* error could not be contrary to any holding of the Supreme

Court.  That is true as to both the question of whether the crime scene viewing was a "critical

stage" of the proceedings and the contention that the denial of counsel constitutes structural error

---

[4] The other two circumstances in which prejudice need not be shown are:  when counsel fails to subject the case to meaningful adversarial testing; and when competent counsel would very likely be unable to render effective assistance under the circumstances.  *See Bell*, 535 U.S. at 696 (citing and quoting *Cronic*, 466 U.S. at 659-62).  Neither situation was at issue here.

under *Cronic*. *See id*. at 317 (explaining that similarity to other trial events that have been held to be a "critical stage" does not make a state court decision "contrary to" clearly established Supreme Court precedent); *Glebe v. Frost*, 574 U.S. 21, 23-24 (2014) (per curiam) (holding that even if limits to closing argument violated the right to counsel, "it was not clearly established that [the] mistake ranked as structural error").

## C.

A state court unreasonably applies clearly established Supreme Court precedent if it correctly identifies the legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 407. This requires that the decision be "objectively unreasonable, not merely wrong," and "even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer*, 538 U.S. at 75-76). A state court's decision is objectively unreasonable only if it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. This deference is particularly warranted when, as here, the Supreme Court's decisions "give no clear answer to the question presented, let alone one in [petitioner's] favor." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam). We conclude that petitioners' claim of *Cronic* error cannot clear this hurdle. But first, a few of petitioners' arguments need addressing.

## 1.

To start, we are not persuaded that respondents confessed structural error under *Cronic* in their state court pleadings. Although one brief said "[t]his crime-scene visit was extremely important to the defense," that discussion related specifically to the *first* crime scene visit where Gaca was questioned. (Edwards, Page ID # 1601.) In another brief, the State conceded that "the visit made to the scene by the judge at night . . . was error" because the trial judge did so without

the knowledge or consent of counsel.  (Royster, Page ID # 1342.)  But nothing about either concession was an admission of *structural* error.  The state court found, or at least assumed, that the judge's solo visit to the crime scene was erroneous and imprudent—as would we.  Indeed, we have held in a direct appeal that it was reversible error for a trial judge to have denied the defendant and his attorney the opportunity to attend a viewing of the crime scene.  *See United States v. Walls*, 443 F.2d 1220, 1222-23 (6th Cir. 1971).  Importantly, however, *Walls* explained that the reversal was based on this court's supervisory authority, and expressly declined to decide whether it would be "error of Constitutional dimensions" to conduct the view without the defendant or his attorney. *Id*. at 1223 n.3.

Nor is this court bound by the state court's finding that the judge's crime scene visit was "a critical stage of a criminal proceeding which a criminal defendant has the right to attend with the assistance of counsel."  *Edwards*, 2015 WL 1069275, at *7 (citations omitted).  Petitioners argue that it is binding because "a state court's interpretation of *state law*, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (emphasis added).  But the critical question—whether the absence of counsel at the crime scene visit constituted a *per se* violation of the Sixth Amendment under *Cronic*—is not a matter of *state* law.  What would be binding is the state court's conclusion that Michigan's statutory right to be present at trial extends to a fact-finder's viewing of a crime scene because it is part of the trial.  Because we assume that Michigan would consider the judge's crime scene view to be part of the trial, we also assume that petitioners had a Sixth Amendment right to the assistance of counsel at such a viewing.

That being the case, petitioners understandably rely on this court's statement in *Green v. Arn* that "[i]t is difficult to perceive a more critical stage of trial than the taking of evidence on the

defendant's guilt." 809 F.2d 1257, 1263 (6th Cir. 1987), *vacated on other grounds and reinstated*, 839 F.2d 300 (6th Cir. 1988). Although prejudice was presumed in *Green*, a close reading reveals that it mattered to the decision that defense counsel was absent from the trial for a "critical" part of an afternoon during which a key government witness was cross-examined by the codefendant's counsel. *Id*. at 1260-61. We also acknowledged that some absences of defense counsel during trial may have no constitutional significance, *id*. at 1261, and that "a harmless error analysis is appropriate in some instances," *id*. at 1263. Ultimately, even if we could be convinced that the judge's second viewing of the crime scene was comparable to the taking of evidence, *Green* still would not be controlling.

Not only did *Green* pre-date AEDPA, but circuit precedent may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced." *Marshall*, 569 U.S. at 64; *see also Glebe*, 574 U.S. at 24 (reiterating that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'") (citation omitted). To collapse the distinction between an unreasonable application and what we might believe to be an incorrect or erroneous application of Supreme Court precedent "would defeat the substantial deference that AEDPA requires." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam). This brings us back to the unreasonable application prong of § 2254(d)(1).

**2.**

The Michigan Court of Appeals rejected petitioners' claim that the judge's second crime scene viewing was structural error under *Cronic*, concluding that "an absence of counsel at a critical stage may, under some circumstances, be reviewed for harmless error." *Edwards*, 2015 WL 1069275, at *8 (quoting *Murphy*, 750 N.W.2d at 586-87 (Markman, J., concurring) (collecting

cases)).    Petitioners contend that the application of harmless error review was objectively unreasonable because the absence of counsel at *every* critical stage requires automatic reversal under *Cronic*.  But that is not necessarily the case—it depends on what the state court meant by "critical stage."

As two of the circuit court decisions cited in *Murphy* explain, the absence of counsel at a critical stage of the proceeding may violate the Sixth Amendment without warranting a presumption of prejudice under *Cronic*.  *See Ditch v. Grace*, 479 F.3d 249, 255 (3d Cir. 2007) ("Under an expansive reading of *Cronic*, a denial of counsel at any critical stage . . . would warrant a presumption of prejudice.  However, we conclude that *Cronic* should be read in a more limited fashion."); *United States v. Owen*, 407 F.3d 222, 228 (4th Cir. 2005) (rejecting argument that "denial of counsel at *any* 'critical stage' of the trial process requires automatic reversal").

The Supreme Court has sometimes used the phrase "critical stage" broadly to refer to proceedings where a right to counsel attaches but the denial of counsel is nonetheless subject to harmless error analysis (such as in *Coleman v. Alabama*, 399 U.S. 1 (1970), and *United States v. Wade*, 388 U.S. 218 (1967)).  *See Owen*, 407 F.3d at 227-28.  However, *Cronic* relied on earlier Supreme Court decisions that used the phrase "critical stage" more narrowly to refer to proceedings for which there is a right to counsel *and* "at which [the] denial of counsel necessarily undermines the reliability of the entire criminal proceeding" (such as in *Hamilton* and *White*).  *Id*. at 228.  Recognizing this distinction, *Owen* held that its assumption that the "federal arraignment was a 'critical stage' within the meaning of *Wade*" did not commit the court to the conclusion that the denial of counsel required automatic reversal under *Cronic*.  *Id*.  The same would be true for the state court here.

Although the Supreme Court has not commented on this reading of its critical-stage jurisprudence, it is consistent with its descriptions of *Cronic*'s rule of presumed prejudice. In *Roe*, the Court described *Cronic* as recognizing structural error "when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). And in *Woods*, the Court reiterated that "*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Woods*, 575 U.S. at 318 (quoting *Cronic*, 466 U.S. at 658). In other words, unless the state court used the phrase "critical stage" as a short-hand for *Cronic* error, it would not have been objectively unreasonable to also conclude that the petitioners' denial-of-counsel claim could be reviewed for harmless error.

Countering in reply, petitioners point to the statement by another circuit court that it would be "contrary to" *Cronic* if the state court found a "critical stage" but nonetheless conducted harmless error review. *See Musladin v. Lamarque*, 555 F.3d 830, 838 n.6 (9th Cir. 2009). That decision does not help petitioners for several reasons. Most importantly, it is evident from the court's analysis that its conclusion was based on its use of the phrase "critical stage" to mean *Cronic* error for which prejudice must be presumed. *Id*. at 838-40. Also, because the state court provided no reasons for rejecting the claim, it was assumed that "the state court found that the stage at issue [] was not a 'critical stage' such that *Cronic* require[d] automatic reversal." *Id*. at 838 n.6. Ultimately, the court in *Musladin* reviewed the denial of counsel claim for harmless error after determining that "the state court's decision *not* to apply *Cronic* to Musladin's case was *not* objectively unreasonable." *Id*. at 843 (emphasis added).

Similarly, we also do not know why the Michigan Court of Appeals rejected the claim of structural error under *Cronic*. The only hint is that the state court described a crime scene viewing

to be a "critical stage" at which "a criminal defendant has the right to attend with the assistance of counsel." *Edwards*, 2015 WL 1069275, at *7. That only tells us that the state court found a right to counsel; not that there was a *Cronic* error. So, as in *Musladin*, AEDPA limits our inquiry to determining whether the state court's decision not to apply *Cronic*'s rule of presumed prejudice was objectively unreasonable.

Moreover, interpreting *Cronic* error this way also properly situates it as a narrow exception to the Supreme Court's broadly stated harmless error rule. *See Fulminante*, 499 U.S. at 307-08 (distinguishing constitutional violations that result in structural error from those that involve "trial error" occurring in the presentation of evidence "which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt"). Speaking generally in *Satterwhite*, the Court explained that some constitutional violations "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can *never* be considered harmless." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (emphasis added). More particularly, "Sixth Amendment violations that pervade the entire proceeding fall within this category." *Id.* (citing *Hamilton* and *White* (absence of counsel at arraignment affected entire proceeding because defenses not asserted were irretrievably lost), *Holloway v. Arkansas*, 435 U.S. 475 (1978) (conflict of interest in representation throughout proceeding), and *Gideon v. Wainwright*, 372 U.S. 335 (1963) (total deprivation of counsel throughout the entire proceeding)). Without citing *Cronic*, the Court cited the same cases as *Cronic* to illustrate Sixth Amendment errors that could never be considered harmless.

In *Satterwhite*, the question was whether harmless error analysis applied to an erroneous admission of psychiatric testimony obtained in violation of a capital defendant's Sixth Amendment

right to consult with counsel prior to submitting to certain psychiatric examinations. *Id*. at 255-56 (citing *Estelle v. Smith*, 451 U.S. 454, 471 (1981)). What is important for our purposes is that the Court expressly rejected a rule of automatic reversal and, in doing so, distinguished *Hamilton*, *White*, *Holloway*, and *Gideon* because those were "all cases in which the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding." *Id*. at 257. Instead, harmless error analysis applied to the *Estelle* claim because "the evil caused by [the] Sixth Amendment violation [was] limited to the erroneous admission of particular evidence at trial." *Id*. (discussing cases). The Supreme Court has not addressed how *Cronic*'s rule of presumed prejudice fits with *Satterwhite*'s description of Sixth Amendment violations that constitute structural error. But whatever daylight might be between them, *Satterwhite* confirms that *Cronic* error is properly understood as a narrow exception to the harmless error rule.

**3.**

As discussed, we assume that the trial judge's solo visit to the crime scene violated the petitioners' Sixth Amendment right to counsel. A *per se* violation of the Sixth Amendment requiring automatic reversal under *Cronic* occurs when there is a "complete denial of counsel" at, or counsel is "totally absent" from, a "critical stage" of the criminal proceedings. *Cronic*, 466 U.S. at 658-59 & n.25. Lacking "a comprehensive and final one-line definition of 'critical stage,'" this court has identified the common thread in the Supreme Court's decisions to be "whether there was a reasonable probability that [the defendant's] case could suffer significant consequences from his total denial of counsel at the stage." *Van v. Jones*, 475 F.3d 292, 312-13 (6th Cir. 2007). Under AEDPA's unreasonable application prong, state courts have broad discretion in adjudicating *Cronic* claims because the precise contours of the right remain unclear. *Woods*, 575 U.S. at 318.

It bears repeating that petitioners were represented by counsel at trial, including during the judge's first visit to the crime scene when the eyewitness demonstrated where she had been standing in relation to the shooting. It was the judge's nighttime view of the crime scene that occurred without the prior knowledge or presence of defense counsel. The state court found that the only purpose of that visit was to confirm the lighting conditions in the parking lot. The judge's unsupervised crime scene view was improper, but it was not itself a "critical stage" of the proceeding where "defenses may be [] irretrievably lost, if not then and there asserted," *Hamilton*, 368 U.S. at 54, or one where "rights are preserved or lost," *White*, 373 U.S. at 60. Nor is it akin to a complete denial of summation, *see Herring v. New York*, 422 U.S. 853, 864-65 (1975), or a total lack of counsel on appeal, *see Penson*, 488 U.S. at 88-89. At least it would not be an unreasonable application of *Cronic* for the state court to say so.

If the stage is the trial, the claim must be that the temporary absence of counsel at the judge's unsupervised view of the crime scene held such significant consequences for the defendants that a presumption of prejudice was warranted. The judge's observation—that the area was well lit—was not evidence offered by the government. It was also not evidence of the lighting conditions at the time of the shooting. Gaca was shown photographs of the scene and testified about what she saw, where she was standing, and the lighting conditions when the shooting occurred. The denial of counsel resulted in the fact-finder's improper receipt of information or evidence relevant to the assessment of the eyewitness's credibility, although her credibility was also tested both in court and at the first crime scene visit. And, because the visit was disclosed at trial, defense counsel had an opportunity to dispute whether the lighting conditions had changed. Notably, the judge's observation was not directly inculpatory, and the Michigan Court of Appeals

found that it was "of little consequence in light of the other incriminating evidence, especially the surveillance video, tether, and forensic evidence." *Edwards*, 2015 WL 1069275, at *8.

The Michigan Court of Appeals could reasonably have concluded that denial of counsel at the judge's unsupervised view of the crime scene was not a "complete" denial of counsel at a critical stage of the proceeding. *See, e.g.*, *United States v. Roy*, 855 F.3d 1133, 1148 (11th Cir. 2017) (en banc) ("Because the brief [seven-minute] period during which Roy's counsel was absent [was] not itself a 'stage of his trial,' Roy did not suffer 'the complete denial of counsel' for 'a critical stage of his trial.'" (quoting *Cronic*, 466 U.S. at 659)); *Sweeney*, 766 F.3d at 861 ("Sweeney's counsel's brief absence [during the direct examination of a cooperating coconspirator] was not a 'complete' absence because it only lasted three minutes."). Moreover, it would not have been objectively unreasonable for the state court to conclude that the absence of counsel at a fact-finder's second limited crime scene view would not likely render the proceedings "presumptively unreliable." *Roe*, 528 U.S. at 484; *see also Schmidt*, 911 F.3d at 484-85 (finding a fairminded jurist could conclude that limitation on counsel's participation during *in camera* questioning of defendant was not presumptively prejudicial).

When the Supreme Court's decisions "give no clear answer to the question presented, let alone one in [petitioners'] favor," we cannot conclude that the state court unreasonably applied clearly established Supreme Court precedent. *Wright*, 552 U.S. at 126. Here, within the constraints of AEDPA, and mindful of the broad discretion state courts have in adjudicating claims of *Cronic* error, a fairminded jurist could conclude that a presumption of prejudice was not warranted by the denial of counsel during the judge's limited nighttime view of the crime scene. *See Woods*, 575 U.S. at 317-18.

**V.**

The judgments of the district court denying habeas relief with respect to petitioners' claim of structural error under *Cronic* are **AFFIRMED**.